Submitted on brief June 25, reversed July 14, rehearing denied September 22, 1914.

## PELTON v. GOLD HILL CANAL CO.

(142 Pac. 769.)

**Warehousemen—Conversion—Sale of Property Bailed.**

1.   A deposit of wheat in a warehouse under an agreement that the warehouseman will buy at any time at market prices and will make no charge for storage unless the depositor removes the grain or leaves it in storage more than 12 months, in which case he agrees to pay two cents per bushel per month, being a bailment and not a sale, the use of the wheat by the warehouseman was an unlawful conversion to its own use, for which an action will lie.

[As to power of bailees to make sales, see note in 66 Am. Dec. 758.]

**Corporations—Officers—Liability for Corporate Acts.**

2.   A director of a corporation is not liable for any tort of other subordinate agents in which he did not participate.

[As to personal civil liability of officer or director to person injured by tort of corporation, see note in Ann. Cas. 1913D, 1058.]

**Corporations—Officers—Actions—Evidence.**

3.   In an action against a corporation and its directors for the conversion of grain deposited in its warehouse, evidence *held* not to connect the directors with the conversion of the property.

**Corporations—Officers—Actions—Evidence.**

4.   In an action against a corporation and its directors for the conversion of grain, evidence *held* insufficient to show that the directors knew that the corporation was insolvent at the time the grain was received for storage.

**Corporations—Officers—Remedies—Nature and Form.**

5.   Where, after the insolvency of a corporation became apparent, and the directors knew of the conversion of wheat in its storehouse, they procured a decree of foreclosure against the company, and bid the property in for their own benefit at less than its real value, the

72 Or.—23

owner of wheat converted has no remedy at law directly against the directors, but must proceed against them by suit in equity after liquidating his claim by an action at law against the corporation.

[As to duty of warehouseman in the care of property, see note in 136 Am. St. Rep. 212.]

From Jackson: Frank M. Calkins, Judge.

In Banc.    Statement by Mr. Chief Justice McBride.

This is an action by Horace Pelton, substituted for the Gold Hill Bank, a corporation, against the Gold Hill Canal Company, defendant, and W. R. McKeen et al., defendants and appellants, to recover the value of certain wheat stored in the warehouse of the defendant corporation, which it was claimed defendants had fraudulently converted.    The complaint sets forth that the defendant corporation operated a gristmill and warehouse for the storage of wheat and was engaged in a general warehouse and milling business in Jackson County, and that the defendants McKeen, Fauvre, English, Ward, Smith, Wright, Reed, Hovey and Test were the directors of the corporation, having full management and control of its business, and handling, buying, selling and disposing of such grain and other produce as came to the gristmill.    The complaint continues as follows:

"That between the 25th day of August, 1905, and the 1st day of October, 1906, the plaintiff, Horace Pelton, delivered to the defendants at said gristmill and warehouse, 1,842⅓ bushels of wheat for storage with said defendants as such warehousemen, under an express understanding and agreement; that the same was placed there for the purpose of sale by plaintiff and intrusted to defendants as warehousemen; that if, during the time said wheat should so remain in storage, plaintiff should have an opportunity to sell the same at a price suitable to him, before making such a sale to anyone else he should allow the defendants an op-

portunity to purchase said wheat at the same price at which he had an opportunity to sell the same to another; that said wheat was so placed in such storage under said contract then and there agreed upon; that, except for the fact that the defendants Fauvre, McKeen, English and others of the defendants were directors of said Gold Hill Canal Company, and except for the fact that they were reputed to be honest and wealthy business men and responsible, plaintiff, Pelton, would not have stored said wheat in said gristmill under said contract, but he relied upon the financial standing, reputation and worth of the defendant directors of said Gold Hill Canal Company, and that as an inducement to said contract and the storage of said wheat he relied upon the honesty and integrity of said defendant directors of said defendant corporation to so care for said wheat that the same should not be lost to plaintiff; that, when said wheat was so stored, the defendant Gold Hill Canal Company was insolvent, and such insolvency was known to all of the defendants, but nevertheless the defendants conspired to and did fraudulently convert said wheat to their own use; that at the time said wheat was so stored in such warehouse, the property of the defendant Gold Hill Canal Company was, as the defendants well knew, encumbered with a mortgage in a large sum for the security of an alleged bonded indebtedness, and said defendant corporation was insolvent, but, after the appropriation by defendants of said wheat to their own use, the defendants other than defendant corporation, in pursuance of said fraudulent conspiracy to appropriate said wheat to their own use, caused said mortgage to be foreclosed, and purchased at foreclosure sale all of the property of said defendant corporation, making said purchase in the names of the defendants Fauvre, McKeen and English, and in trust secretly for the benefit of themselves and the other defendants other than the Gold Hill Canal Company, with fraudulent intent and design of defeating the lawful claims and demands against said corporation and said other defendants, of which this claim is one, the defendants,

other than defendant corporation, being nonresidents; that the property of defendant corporation thus bid in by the defendants, said directors, greatly exceeds in value both the amount bid therefor by said directors and the claim of this plaintiff; that said sale and purchase was made in pursuance of said fraudulent conspiracy to so handle the affairs of said corporation as to convert to defendants' own use said wheat belonging to plaintiff; that while said wheat was so held in trust and in storage by the defendants in said capacity as such warehousemen, the defendant directors of defendant corporation so negligently, carelessly and dishonestly handled the affairs of said defendant corporation that they appropriated to their own use all of said wheat and the same thereby converting said wheat to their own use.''

The case was put at issue by a denial by the defendant directors of all the material allegations of the complaint. There was no appearance on behalf of the defendant corporation. The conditions of storage are indicated by a storage receipt, which is as follows:

"Storage Receipt.—Rogue River Mills.

"Gold Hill, Oregon, Sept. 8, 1905.

"Received from Horace Pelton on storage 9343 lbs. of wheat, 77 sks. The conditions upon which the above is received are as follows, viz.: The Rogue River Mills agree to buy the above at any time at market prices. The Rogue River Mills makes no charge for storage, except as named herein, and assumes no risk for loss of any kind, the cause of which may be beyond their control. In case the party leaving the above desires at any time to remove same, he agrees to pay storage charges at the rate of 2c per bushel per month, or, in case the above is left longer than 12 months, to pay storage charges at the above rate, whether property is sold to the mill or not. This receipt must be returned when settlement is made.''

"[Signed]   R. W,''

All the receipts were not in this form, some merely reciting the delivery and acceptance of the wheat; but the evidence indicates that all deliveries were upon the same conditions as indicated in the receipt above set forth.   There was a jury trial, and upon the close of plaintiff's testimony a motion was made for nonsuit, which was overruled.   The jury returned a verdict for plaintiff in the sum of $2,173.94, being the full amount claimed.   Defendants appeal.   Submitted on briefs without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED.   REHEARING DENIED.

For appellants there was a brief over the names of *Mr. William I. Vawter* and *Mr. Holbrook Withington.*

For respondent there was a brief over the names of *Mr. Joseph L. Hammersley* and *Mr. Alfred E. Reames.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. We consider the law to be settled in this state that a deposit of wheat upon the conditions indicated in the warehouse receipt quoted constitutes a bailment and not a sale.   The subject is so ably and thoroughly considered by Mr. Chief Justice BEAN in the case of *Savage* v. *Salem Mills Co.,* 48 Or. 1. (85 Pac. 69, 10 Ann. Cas. 1065), that further discussion is unnecessary Being a bailment, it follows necessarily that the use of the wheat by the defendant corporation was an unlawful conversion thereof to its own use, for which an action will lie against it.

2. The difficult proposition in the case relates to the individual responsibility of the directors.   It may be stated as a rule of universal application that a director of a corporation is not liable for any tort of other

subordinate agents in which he did not participate. A recent writer succinctly states the law in the following language:

"This principle of agency leads inevitably to the conclusion that directors are not liable on contracts made by them on the company's behalf, if their directorship is disclosed to the contractor. To be sure, if the contract is beyond the scope of their authority, or *ultra vires* of the corporation, or for some other reason not binding on the company, they may, like other agents, be liable on an implied warranty of authority. But if all the facts are known to the opposite party to the contract, the directors incur no liability to him because the contract is in law *ultra vires* of the corporation, and therefore not binding upon it. Moreover, if the contract is ratified, or, being *ultra vires* of the corporation, is so far executed as to become binding on the company, no liability to the third person is incurred by the directors or officers who entered into the contract. * * Directors are not liable to creditors of the company, or to any persons to whom the corporation owes a duty, whether arising out of contract or otherwise, for having failed to see to it that the duty is performed. For example, they are not liable personally to a shareholder whose dividends they wrongfully withheld. Even an express oral promise by directors to pay a debt of the corporation may be unenforceable under the statute of frauds. * * On the other hand, although directors are not liable for negligent torts of subordinate agents in which they have not participated, they are clearly liable *ex delicto* for any tort in which they participate. Hence they will be liable to stockholders or creditors who have relied to their hurt upon false reports or prospectuses which the directors have published, fraudulently or (in any jurisdiction where negligent misrepresentation is actionable) negligently; and so an officer of a corporation, who issues on its behalf bonds containing a representation known by him to be false, will be liable to an action of deceit by any purchaser who relies thereon. So, if directors, by regis-

tering a transfer of shares which they know to be held in trust, prejudice the interest of the *cestui que trust,* they are liable *ex delicto* for assisting a trustee to commit a breach of trust; and this liability, it seems, attaches to the directors, although the corporation be exempted by statute from the duty of taking notice of equitable interests in its shares. Similarly, where property of an insolvent company is conveyed to a new corporation charged with payment of the debts of the old company, the directors of the new company, if they wrongfully misapply the assets, are liable in damages to the creditors of the old company. It has been held that, where a corporation infringes a patent, the officers, who act only on behalf of the company, cannot be held individually to account for the profits made by the infringement; but it is submitted that they would be liable in such a case to an action at law for damages by the owner of the patent. * * For mere nonfeasance directors should not be liable to outsiders in tort, and are therefore not liable *ex delicto* to persons who rely upon fraudulent misrepresentations of other agents of the company, in which the directors have not participated. But it has been held, though with questionable soundness, that directors who have notice that certain inferior agents are converting property deposited with the company for safekeeping, and who fail to put a stop to the wrongdoing, are liable *ex delicto* to the depositor for his damages": 2 Machen, Corporations, §§ 1641–1644.

See, also, 10 Cyc. 840; *Frost Mfg. Co.* v. *Foster,* 76 Iowa, 535 (41 N. W. 212) ; *Branch* v. *Roberts,* 50 Barb. (N. Y.) 435.

3. The evidence in this case indicates that the principal defendant is a foreign corporation, all of whose directors reside in the State of Indiana, and none of whom, so far as we are informed, were ever in the State of Oregon; that the affairs of the corporation in this state were under the supervision of a general man-

ager, who received the grain and gave the receipts in question. There is nothing to indicate that the directors, or any of them, had personal knowledge or information as to the deposit of the grain in question until long after it had been ground. and disposed of. In fact, the testimony indicates that they were entirely ignorant of the deposit or conversion until long after the grain had been sold. The plaintiff testifies that about July 24, 1907, he made a demand on the directors for pay for his wheat. In consequence of this demand we find in the minute-book of the board of directors, introduced in evidence by plaintiff, the following entry of the proceedings of a meeting—

"held to consider the claim of Messrs. Pelton & Dungan of Gold Hill, who demanded pay for certain amounts of wheat which they had stored in the company's mill. The secretary was instructed to write Mr. E. C. Thompson, manager at Gold Hill in place of Mr. Leslie, that if the parties did not care to leave the wheat with the company until ground up and money realized from the sale, said Messrs. Pelton & Dungan would take out their wheat from storage."

This indicates that at the time the demand for payment was made by plaintiff the directors were under the impression that the grain was still in the mill and subject to plaintiff's order, and there is no testimony that they in any way directed or connived at its conversion, which was evidently an act of their manager, acting, not for the directors personally, but for the corporation. We are of opinion plaintiff has entirely failed to connect the defendants with the conversion of the property.

4. The evidence does not indicate that the directors knew the corporation to be insolvent at the time the wheat was received for storage. The details as to the

organization and plans of the company are somewhat meager, but it appears that one of its objects was to develop and sell water power from Rogue River, and incidentally to operate a mill by means of the power thus secured, and in connection with the mill to operate and carry on a warehouse for the storage of grain, possibly with a view to ultimate purchase for the purpose of grinding it into flour in the mill. It was a venture requiring money to prosecute it to success, and this money was secured by floating bonds secured by a mortgage on the property. Like many such ventures launched by parties operating from a distance and ignorant of local conditions, it was unsuccessful and financially disastrous to the parties engaged in it, though at the time the wheat was stored it was a going concern, which, perhaps, under better management, might have been successful. There is nothing to indicate that there was any design on the part of the directors to organize or carry on the corporate business with a view of embezzling property stored with it and thereby making a personal profit out of the transaction. They could only save themselves financially by making the venture a success, and their failure to do so, no doubt, brought on them personally serious financial loss. One of the directors testified that his individual loss was $14,000, and it is reasonable to suppose that the others suffered in like proportion to the amounts invested by them.

5. It is also claimed that the directors, after the conversion of the wheat and after the insolvency of the company became apparent, procured a decree of foreclosure to be rendered against the company, and bid the property in for their own benefit at much less than its real value, thus misapplying assets that should

properly be applied to the payment of the claims of its creditors. Without entering into a discussion of the evidence adduced on this branch of the case, it is sufficient to say that plaintiff cannot by an action at law recover for himself assets of the corporation which the directors may have fraudulently appropriated. Having first liquidated his claim by an action at law against the corporation, the remedy of the creditor is by a suit in equity to uncover the assets so converted by the directors and subject them to his claim, in the same manner as an ordinary creditors' bill to uncover and subject to execution property fraudulently conveyed to defeat creditors. His remedy is solely equitable: Elliott, Private Corporations, § 527; *Priest* v. *White,* 89 Mo. 609 (1 S. W. 361); *Westinghouse Electric etc. Co.* v. *Reed,* 194 Mass. 590 (80 N. E. 621, 120 Am. St. Rep. 576).

The judgment will be reversed, so far as it affects the directors, and the cause remanded to the Circuit Court, with directions to grant the motion for a nonsuit as to them.          REVERSED.     REHEARING DENIED.