LEWIS, *Respondent,*
*v.*
DEVILS LAKE ROCK CRUSHING CO. et al,
*Appellants.*

545 P2d 1374

*William B. Wyllie,* Salem, argued the cause and filed the brief for appellants.

*Douglas E. Kaufman,* of McMinimee & Kaufman,

Tillamook, argued the cause and filed a brief for respondent.

HOWELL, J.

## HOWELL, J.

This is an action for general and punitive damages arising out of defendants' conversion of a 6,000-gallon storage tank belonging to plaintiff. Following a jury trial, plaintiff was awarded $500 in general damages against the defendants jointly, and punitive damages of $3,000 against defendant Mallory, $1,500 against defendant Morris, and $1,500 against the defendant corporation. Defendants appeal.

The evidence produced at trial was often conflicting and sometimes confusing. However, since the jury's verdict demonstrates that these conflicts were resolved in favor of plaintiff, the facts are considered in the light most favorable to plaintiff.

Defendants Morris and Mallory were the principal shareholders and officers of defendant Devils Lake Rock Crushing Company. Plaintiff operated a shingle and shake mill nearby.

In 1970 or 1971, Morris acquired five storage tanks and had them moved to the site of the defendant corporation. Of the five, there were two large ones of comparable size and three somewhat smaller ones. There was a conflict in the evidence as to whether some or all of the tanks were owned by Morris personally or by the defendant corporation.

Plaintiff purchased one of the two larger tanks through defendant Morris on May 6, 1972. On May 23, 1973, he resold that tank to a Mr. Cogill. Several months later, plaintiff contacted Morris regarding purchase of a "second tank," the "mate" to the "first tank" which he had previously purchased from Morris and resold to Cogill. The transaction was completed on October 23, 1973, but the "second tank," which is the subject of this litigation, remained on the premises of defendant corporation for several weeks.

At the time of the purchase of the second tank, its actual capacity had not been established. Defendant

Morris estimated that it had at least a 3,000-gallon capacity, and it was purchased on that basis. It was later discovered that the actual capacity of the tank was approximately 6,000 gallons.

Shortly after plaintiff purchased the second tank through Morris, plaintiff discussed the sale with Mallory. Mallory apparently approved of it. Several days later, plaintiff was preparing to remove the tank from the premises of the defendant corporation, and Mallory's son offered to assist in the loading of the tank. However, it began to rain and the move was postponed.

About the middle of November, Cogill contacted Mallory for the purpose of purchasing the "mate" to the first tank which he had purchased through plaintiff. Mallory told Cogill that he couldn't sell it since Morris had a previous commitment or agreement with plaintiff.

On November 30, a Mr. Buisman called plaintiff's office and reported that plaintiff's tank was in the process of being removed from defendants' property. Plaintiff's secretary and plaintiff himself both appeared at defendants' place of business and attempted to halt removal of the tank. They were unsuccessful, and the tank was hauled to Pacific Sand & Gravel Company in Salem, which had purchased it from Mallory.

Plaintiff then contacted the office of the county sheriff and a brief investigation of the matter was made. No charges were ever brought against any of the defendants.

Plaintiff testified that, after his tank had been sold and removed from defendants' property, defendants offered him another, smaller tank—a 3,000-gallon capacity tank—and took the position that this 3,000-gallon tank was the one plaintiff had actually purchased. Plaintiff refused to take possession of this tank.

The jury returned its verdict for plaintiff. However, the first verdict returned was inconsistent with the

law of punitive damages in that although general damages were awarded only against the defendant corporation, punitive damages were assessed against each of the defendants. The trial court refused to accept that verdict and reinstructed the jury. Shortly thereafter they returned with a second verdict awarding both general and punitive damages against each defendant.

On appeal, defendants make the following assignments of error: first, that the trial court erred in denying defendants' motions for an involuntary nonsuit and for a directed verdict as to each defendant; second, that the court erred in failing to sustain defendants' objections to the introduction of irrelevant and prejudicial testimony; third, that the court erred in submitting the issue of punitive damages to the jury; and fourth, that the court erred in denying defendants' motion for a mistrial and in reinstructing the jury when the first verdict returned was inconsistent with the law of punitive damages. We will consider these assignments of error in the order in which they were presented.

Our review of the record indicates that there was substantial, credible evidence in this case to support a jury finding that Mallory, acting on behalf of the defendant corporation, converted plaintiff's storage tank by reselling it to a third party. Correspondingly, defendants' motions for an involuntary nonsuit and a directed verdict as to these two defendants were properly denied. However, we are unable to find any evidentiary basis for a verdict against defendant Morris. The evidence relating to Morris was uncontradicted. It indicates that Morris did not participate in the resale of plaintiff's tank to Pacific Sand & Gravel Co., and did not even learn of the conversion until after the transaction had been completed. As this court noted in a similar case:

"It may be stated as a rule of universal application that a director of a corporation is not liable for any tort of other subordinate agents in which he did not participate.

[ 297 ]

* * * There is nothing to indicate that the directors, or any of them, had personal knowledge or information as to the deposit of the grain in question until long after it had been ground and disposed of. In fact, the testimony indicates that they were entirely ignorant of the deposit or conversion until long after the grain had been sold. * * * We are of the opinion plaintiff has entirely failed to connect the defendants with the conversion of the property." Pelton v. Gold Hill Canal Co., 72 Or 353, 357-58, 360, 142 P 769 (1914).

See also 3A Fletcher, Cyc. Corp. 222, § 1140 (Perm ed 1975):

"An officer of a corporation is not personally liable for a conversion committed by the corporation or one of its officers merely by virtue of the office he holds. An officer's personal liability is based upon his participation, knowledge amounting to acquiescence or the breach of some duty he owes to the owner of the property."

Plaintiff contends that Morris' testimony acknowledging his approval of the sale of the tank to Pacific Sand & Gravel Co. when he subsequently learned of it establishes that he ratified the conversion of plaintiff's tank. Plaintiff argues that this ratification creates a relationship of principal and agent and binds Morris for the acts of Mallory. However, we find no evidence of any agency relationship between Morris and Mallory. Mallory did not purport to act on behalf of Morris when reselling the tank but rather on behalf of the defendant corporation. Consequently, Morris' subsequent approval of this sale after he learned of it was of no legal effect.

Thus, since we conclude that there was no basis for a verdict against Morris, defendants' motions for an involuntary nonsuit and for a directed verdict on Morris' behalf should have been granted.

■ Defendants also contend that the judgment against all three defendants must be reversed because of the trial court's admission, over defendants' objection, of allegedly irrelevant and prejudicial evidence. This assignment of error is divided into two parts. The first

relates to testimony concerning a criminal investigation of the incident in question which was made by the Lincoln County sheriff's office at plaintiff's request. Defendants assert that such testimony was irrelevant and prejudicial, since it "would tend to magnify the significance of the alleged wrong and would tend to magnify the probability of defendant's [sic] culpability in the eyes of the jury." However, the challenged testimony was introduced on rebuttal in response to defendants' testimony which tended to show that plaintiff had consented to the sale and removal of his tank to Pacific Sand & Gravel. On rebuttal, plaintiff testified that he caused the authorities to make a criminal investigation of the incident. This testimony was evidence of his lack of consent to the resale, and, therefore, it was relevant to rebut defendants' own evidence on that issue.

Defendants also object to the admission of certain testimony concerning the conduct of defendant Mallory's sons with plaintiff's daughter which plaintiff had brought to Mallory's attention. Defendants contend that such testimony was irrelevant and prejudicial. Plaintiff, however, asserts that the testimony was relevant to the issue of punitive damages insofar as it showed a basis for malice or ill will on the part of Mallory toward plaintiff.

We believe that the potentially prejudicial effect of such testimony clearly outweighed any possible probative value. In our view, the relevancy of such testimony was tenuous at best, and the possibility of prejudice was significant. Consequently, the testimony should have been excluded. *See Plourd v. Southern Pac. Transp. Co.,* 266 Or 666, 685, 513 P2d 1140 (1973). *Cf. State v. Flett,* 234 Or 124, 127-28, 380 P2d 634, 94 ALR2d 1082 (1963). *See also* McCormick on Evidence 438-41, § 185 (2d ed 1972).

However, we do not believe that the admission of such testimony constitutes reversible error in this case. Although at one point in the trial defendants did

object to the admission of testimony concerning the conduct of Mallory's sons toward plaintiff's daughter, an earlier inquiry into the same subject matter during plaintiff's examination of Mallory passed without objection. Under these circumstances, we cannot say that the error in admitting the subsequent testimony on the same subject requires a reversal in this case. *See* McCormick, supra at 128, § 55.

Next, defendants contend that the trial court erred in not removing the issue of punitive damages from the jury's consideration for lack of sufficient evidence of malice. We disagree.

It has been well established that, in an appropriate case, punitive damages can be recovered in an action for conversion under Oregon law. *See* Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175, 218-26 (1965); Annot., 54 ALR2d 1361 (1957). This principle has been reaffirmed recently in *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974). *See also Edwards v. Uncle Don's Mobile City,* 273 Or 746, 543 P2d 4 (1975). However, it is equally clear that an award of punitive damages will not be appropriate in every action for conversion.[1] The only proper justification for such an award lies in the theory of deterrence. *Stroud v. Denny's Restaurant, Inc.,* 271 Or 430, 532 P2d 790 (1975); *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306, 27 ALR3d 1268 (1967). Consequently, punitive damages should be awarded only in

[1] Good faith is not a defense to a conversion action, but good faith will protect the actor from an assessment of punitive damages. A distinction should be made

"between (1) malice in the technical sense of intent to do a wrongful act and (2) malice in the popular sense of ill will accompanying a wrongful act which is done in the honest belief that it is not wrongful. It is properly the former which ought to subject the wrongdoer to exemplary damages. 'Making an example' will not deter future good-faith converters who honestly believe that they have a right to act. Similarly, it seems unduly harsh to assess exemplary damages against someone who honestly mistakes his rights against another person for the sole reason that he happens coincidentally to harbor a feeling of malice toward that person." Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175, 226 (1965).

those cases in which the award will tend to deter the defendant and others from committing similar wrongs in the future.

■  We feel that this is such a case. There was evidence produced at trial from which the jury could have concluded that Mallory did not have an honest, good faith belief that plaintiff did not own the tank, and that Mallory deliberately resold the tank for a better price in defiance of plaintiff's ownership interest.

■  Correspondingly, we conclude that the trial court did not err in refusing to remove the question of punitive damages from the jury in this case. However, we have previously determined that there was no basis for an award of compensatory damages against defendant Morris, and it follows that the jury's award of punitive damages against Morris must be stricken as well. *See Belleville v. Davis,* 262 Or 387, 498 P2d 744 (1972); *Crouter v. United Adjusters, Inc.,* 259 Or 348, 485 P2d 1208 (1971).[2]

■  Finally, defendants assign as error the trial court's denial of their motion for a mistrial when the jury returned its first verdict, which awarded $500 general damages against the defendant corporation alone but assessed substantial punitive damages against each of the defendants. Thus, it was apparent that the jury had misunderstood the law as set forth in the court's instructions, for, at least as a general rule, punitive damages may only be recovered upon an assessment of general damages against that defendant. *See Belleville v. Davis,* supra; *Crouter v. United Adjusters, Inc.,* supra. In such a situation there were two courses of action open to the trial court: it could either declare a mistrial, or reinstruct the jury and resubmit the case to them. The trial court chose the latter course of action, and we do not feel that this choice amounted to

---

[2]Defendants also assert, for the first time on this appeal, that the jury's apportionment of punitive damages among the several defendants was improper and entitled them to a new trial. This is not the law in Oregon. *See Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974).

an abuse of discretion under the circumstances of this case. *Cf. Hickman v. Haughton Elev. Co.,* 268 Or 192, 519 P2d 369 (1974).[3] Therefore, the jury's second verdict assessing general and punitive damages against each defendant should not be disturbed on that basis.

In summary, we conclude that the judgment below must be reversed as to defendant Morris and affirmed as to defendant Mallory and the defendant corporation.

Affirmed in part, reversed in part.

---

[3] Defendants assert, again for the first time on this appeal, that the additional instructions which were given to the jury after they had returned with the first verdict were too "informal" and were unfairly favorable to plaintiff. These objections were not raised at the trial level, and defendants' own requested instruction was neither adequate to apprise the trial court of the alleged defects nor an accurate statement of the applicable law. Consequently these issues were not preserved on this appeal. *See Wood Ind'l Corp. v. Rose,* 271 Or 103, 530 P2d 1245 (1975); *U.S. National Bank v. Lloyd's,* 239 Or 298, 326, 382 P2d 851, 396 P2d 765 (1964).