BERI, INC., *Appellant,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-800, SC No. 25307)

DICK NILES, INC., *Appellant,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 423-464, SC No. 25287)

LAWSON et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-803, SC No. 25288)

PIACENTINI et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-823, SC No. 25289)

LEAHY et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-723, SC No. 25290)

SZABO et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-722, SC No. 25291)

RICKLES et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-669, SC No. 25292)

ERICKSON et ux, *Appellants,*
*v.*
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-668, SC No. 25293)

[ 569 ]

PENNINGTON, *Appellant,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-666, SC No. 25294)

MERCER et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 409-665, SC No. 25295)

MARKS et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-657, SC No. 25296)

EDWARDS et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-654, SC No. 25297)

JACOBS et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-451, SC No. 25298)

DANCHOK et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-450, SC No. 25299)

POWELSON et al, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-281, SC No. 25300)

SAVARIA et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-248, SC No. 25302)

SCHMITZ et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-694, SC No. 25303)

BROWN et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-799, SC No. 25304)

WICKS et al, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-802, SC No. 25305)

CHARBONNIER et ux, *Appellants,*
v.
SALISHAN PROPERTIES, INC., et al, *Respondents.*
(No. 410-801, SC No. 25306)
580 P2d 173

Ridgway K. Foley, Jr., Portland, argued the cause for appellants. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, John L. Schwabe, Roland F. Banks, Jr., and Donald Joe Willis, Portland.

Gregory R. Mowe, Portland, argued the cause for respondents. With him on the brief were Davies, Biggs, Strayer, Stoel & Boley, and Barnes H. Ellis, Portland, attorneys for respondents John D. Gray and Russel M. Colwell; and Black, Kendall, Tremaine, Boothe and Higgins, and Robert J. Miller, Portland, attorneys for respondent Salishan Properties, Inc.

Before Holman, Presiding Justice, Bryson, Lent and Linde, Justices, and Thornton, Justice Pro Tempore.

HOLMAN, J.

Linde, J., concurring opinion.

## HOLMAN, J.

These 20 cases, consolidated for purposes of appeal, are companions to *Cook v. Salishan Properties,* 279 Or 333, 569 P2d 1033 (1977) and arise out of the same real estate development and promotion. Plaintiffs are lessees of oceanfront lots in the Salishan development in Lincoln County. Defendants are Salishan Properties, Inc., Russell Colwell, its president, and John Gray, its secretary.

In *Cook* we held that a commercial subdivider-developer who offers building lots for sale (or for long-term lease, which we treated as the equivalent of a sale for purposes of decision) does not impliedly warrant that the lots are free of latent defects or are fit for the purpose for which they are sold. The alleged defect in that case, as it is in the cases now before us, was that these oceanfront lots are subject to, and are being destroyed by, erosion. In *Cook* the jury had rejected plaintiffs' claims based on negligence and false representations. The only question which was before us there was whether the trial court had erred in refusing to include the implied warranty count with those counts submitted to the jury.

In the present cases judgments were entered for the defendants at the pleading stage, the trial court having concluded that plaintiffs had failed to state a cause of action based on either negligence or implied warranty. Plaintiffs' assignments of error challenge the trial court's rulings on both counts. In reviewing these rulings, we will, as we did in *Cook,* consider plaintiffs' long-term leases as the equivalent of purchases of the lots involved. *See* 279 Or at 338, note 4.

With respect to the implied warranty count, our decision in *Cook* concededly disposes of all but two of the present cases. In each of those two cases, plaintiffs contend that they did not simply lease a building lot; rather, they leased condominium dwelling units constructed by defendant Salishan Properties. Although defendants contend that these plaintiffs have not

adequately alleged that they leased buildings constructed by Salishan Properties, we will assume for present purposes that the allegations are sufficient to permit proof to that effect. Because our decision in *Cook* was concerned only with the warranty liability of the seller (or long-term lessor) of developed but unimproved land, the first question in the present case is whether it makes any difference for purposes of warranty liability that plaintiffs leased a structure and not just bare land. The relevant allegations of the complaints are:

"Since plaintiffs leased their lot and condominium damage to their lot and condominium and to the value thereof has been caused, and continues to be threatened, by erosion from the ocean and other water adjacent to said lot. Plaintiffs' oceanfront lots are eroding into the ocean.

"* * * * *.

"Defendants, by the acts of holding themselves out as highly skilled and competent land and resort developers and offering and entering into said lease and by expressly limiting the use of the land leased solely for the construction of permanent, residential structures, impliedly warranted that said lot was reasonably fit for construction and the maintenance thereon of permanent residential structures. The lot was not reasonably fit for that purpose, and defendants, therefore, breached this warranty."

The complaint in *Cook* contained identical allegations as to the origin and nature of the claimed implied warranty.

In *Yepsen v. Burgess,* 269 Or 635, 525 P2d 1019 (1974), we held that in the sale of a new house by a builder-vendor, the law implies a warranty of workmanlike construction and fitness for habitation. We were persuaded to recognize that implied warranty for several reasons: (1) the provision of a habitable house is the essence of such a transaction; (2) the typical home buyer is forced to rely on the skill and knowledge of the builder-vendor with respect to the ingredients of an adequately constructed dwelling; (3) the buyer sees

[ 574 ]

the transaction primarily as the transfer of a house, with the land as merely an incident to the purchase. For these reasons, we concluded, there is no substantial difference between the sale of a house and the sale of goods. In *Yepsen* the specific defect alleged—the improper construction of the septic tank and drain field—was admittedly not in the house itself, but we held that it was within the implied warranty for two reasons: it was the product of the builder's work on the land in conjunction with the construction and sale of the house, and it involved a system which was essential to the use of the house.

In *Cook* we refused to recognize an implied warranty of fitness for use in the sale or long-term lease of a subdivided lot, pointing out that the buyer of land has opportunities for inspection and investigation which are greater than those available to the buyer of a completed house. We also pointed out that we were not aware of any general expectation that a subdivider-seller would provide a lot free of latent and undiscoverable defects.

■ In light of the reasoning which supported our decisions in *Yepsen* and *Cook,* we are convinced that an allegation of the purchase or lease of a condominium unit does not call for a result in these cases different from that which we reached in *Cook.* The defect alleged has to do solely with the inherent nature of the land involved in the transaction; it is in no sense the product of defendants' work on the land. The defective condition alleged—susceptibility to erosion —was not alleged to have been caused or concealed by defendants' construction work. The nature and significance of the alleged defect are the same whether the land is sold (or leased) with or without a structure already in place. Whatever the scope of the warranty implied in the sale or lease of a condominium unit, the reasoning in *Cook* leads us to conclude that it does not extend to conditions of the associated land which are not caused by the builder-seller's work on the land.

[ 575 ]

The trial court did not err in striking plaintiffs' implied warranty counts.

We turn next to plaintiffs' allegations of negligence. They are:

"Prior to the time plaintiffs entered into said lease, defendants knew, or in the exercise of reasonable care should have known, that plaintiffs' lot was located on real property that would be in the foreseeable future damaged and destroyed by erosion from the ocean and other water adjacent to the lot. Defendants were negligent in one or more of the following particulars: (1) in failing to warn plaintiffs of this danger prior to leasing said lot to plaintiffs, and (2) in failing to adequately inspect and investigate whether plaintiffs' lot was suitable for development with permanent residential structures before offering the lot for lease for that purpose."

As will be seen by an examination of this paragraph, plaintiffs have alleged two, apparently alternative, possible states of fact. One alternative is that defendants knew that plaintiffs' lot would be "damaged and destroyed" by erosion and negligently failed to warn plaintiffs of that fact. The other is that defendants should, in the exercise of reasonable care, have learned of the impending erosion, but negligently failed to discover it. We treat these two alternative possibilities separately.

■■ The first is easily disposed of. If defendants knew that the lots were subject to destruction in the future from erosion and failed to inform plaintiffs of that fact, plaintiffs' remedy—when damages are sought in preference to rescission—is an action in deceit. The recovery of damages for misrepresentation or non-disclosure in a real estate transaction requires a showing that the vendor misrepresented or withheld the truth with the intent that the purchaser would rely on the apparent, rather than the actual, state of facts. *Briscoe v. Pittman,* 268 Or 604, 522 P2d 886 (1974); *Musgrave v. Lucas,* 193 Or 401, 410, 238 P2d 780 (1951). Plaintiffs have chosen not to pursue an action

for deceit based on deliberate concealment.[1] They may not seek the same relief based on a showing of negligent nondisclosure. *Accord, Whiten v. Orr Construction Company,* 109 Ga App 267, 136 SE2d 136 (1964).

As to the second alternative, however, we conclude that the trial court erred in sustaining the demurrer. The trial court concluded that defendants had no duty to inspect or investigate the land for susceptibility to erosion in light of its oceanfront location, reasoning that the danger of erosion along the coastline is a matter of general knowledge and that defendants had a right to assume that plaintiffs would find out, before entering into these transactions, whether the action of the ocean would affect their lots.

Plaintiffs allege, and we must therefore assume as true for present purposes, that defendants "held themselves out as highly skilled and competent land and resort developers." Considering that the development of subdivisions and the sale of building lots are nowadays often done by persons who have made these activities their business or occupation, it is somewhat surprising that neither we nor the parties have found any cases in which a court has considered whether a person in the business of subdividing and developing land for sale as building lots has a duty to use reasonable care to determine whether the lots he sells are fit for their intended use. We see no reason, however, why the existence of such a duty should be denied as a matter of law.

In other occupational contexts it has been accepted doctrine that one who holds himself out as having the skill and competence which prevails in a given profession or trade has a duty to exercise that skill and competence in carrying on his business activities. *See*

---

[1] The original complaints also alleged fraudulent misrepresentation or concealment. However, plaintiffs voluntarily amended their complaints to omit the charges of fraud.

Restatement (Second) Torts § 299A.[2] A person who undertakes to construct a house has frequently been held liable for negligence when the construction has not been performed with reasonable care. Cases are collection in Annotation, *Liability of Builder-Vendor or other Vendor of New Dwelling for Loss, Injury, or Damage Occasioned by Defective Condition Thereof,* 25 ALR3d 383, 397 *et seq.* (1969), and include instances of liability for negligent construction on filled or otherwise unstable land. *See, e.g., Sabella v. Wisler,* 59 Cal2d 21, 27 Cal Rptr 689, 377 P2d 889 (1963); *Conolley v. Bull,* 258 Cal App 2d 183, 65 Cal Rptr 689 (1968). In *McFeeters v. Renollet,* 210 Kan 158, 500 P2d 47 (1972), it was held that a builder-vendor could be held liable for damages on a theory of negligence where before constructing the houses which he contracted to build for the plaintiffs he did not make tests to determine the level of the water table on the lots. There was expert evidence that there had been drainage problems in the area and that a reasonably prudent builder would have attempted to determine the level of the water table before beginning construction. Also, in *Baranowski v. Strating,* 72 Mich App 548, 250 NW2d 744 (1976) it was held that the trial court could properly find a building contractor liable in negligence for failure to conduct soil bearing tests before building a home on plaintiff's lakefront lot.

If builders can be held liable for their negligence in constructing a building without first making reasonable tests to determine the quality of the underlying soil, we see no reason why a land developer—one who chooses land and lays it out into lots which are sold for the specific and limited purpose of building a dwelling thereon—may not be held responsible for losses to purchasers caused by his failure to take reasonable

---

[2] "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

precautions to determine whether the lots he offers are fit for that purpose. We have held, as noted, that such a developer is not a guarantor that the land is free from all latent defects. *Cook v. Salishan Properties, supra.* We see no reason, however, why the commercial developer and seller of land should not be liable for the failure to exercise reasonable care in the project he has undertaken.

Defendants rely on *Gill v. Marquoit,* 269 Or 581, 586, 525 P2d 1030 (1974), wherein we said:

> "* * * [sellers], in the absence of something to suggest otherwise, were entitled to assume that [purchasers] would, along with other inquiries usually made by those purchasing land, find out whether the adjacent river overran its banks. It is a matter of common knowledge that many rivers in Oregon frequently rise above their banks during the rainy season. The occurrence is so common that ordinarily a seller may assume that the purchaser knows, or if he does not know, he will find out whether the action of a neighboring river will affect the land being purchased."

The appeal in *Gill* was taken after trial, so that this court had the evidence before it on review. It was shown that the land in question had a long history of annual flooding. 269 Or at 582. The language upon which defendants rely must be read in that context; it was clearly intended to point out that the purchasers could have learned of the land's susceptibility to flooding by simple inquiry, and that the sellers had a right to assume that they would do so.

■  We may assume, for present purposes, that the purchasers of oceanfront building lots should be expected in some measure to inquire about the land's susceptibility to erosion. From the allegations of the complaint, however, we have no way of knowing what information such inquiries by plaintiffs would have produced. Under the allegations of their complaints, plaintiffs may be able to prove that a reasonably prudent land developer would have conducted relatively sophisticated tests or investigations—beyond what

[ 579 ]

could be expected of prospective purchasers—before offering to the public building lots in an extensive oceanfront resort development. In short, we cannot say that plaintiffs could not prove, under the allegations of their complaints, a state of facts entitling them to recover.

■ The two individual defendants contend, however, that even if the complaints state a cause of action against the corporation, still the demurrers ought to have been sustained as to them because corporate officers are not vicariously liable for their corporation's torts, nor are they personally liable to third persons for harm caused by the officers' failure to perform duties owed solely to the corporation.[3]

These may be correct statements of the law, but they are not appropriate at this time. Plaintiffs have not attempted to hold the individual defendants liable by virtue of their corporate offices or for neglect of duties arising out of their positions with the corporation. While the complaints allege that the corporation, of which defendants Colwell and Gray were president and secretary respectively, was "the developer of Salishan," they also allege that all of the defendants acquired title to the land, planned and determined its ultimate use, provided the necessary roads and utilities, held themselves out as highly skilled and competent land and resort developers, and offered to lease the individual lots. A fair reading of the allegations of the complaints is that Colwell and Gray are charged with active participation on their own account, not merely in their capacities as corporate officers, in the acquisition, planning, development, promotion, and leasing of the lots in the Salishan resort area. The leases, which are made part of the complaints, are executed for Salishan Properties, Inc.,

_____
[3] In support of these contentions, defendants cite *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 297-98, 545 P2d 1374 (1976); *United States Liabil. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal3d 586, 83 Cal Rptr 418, 463 P2d 770 (1970); 3A Fletcher, Cyc. Corp. 207, § 1137; 274, § 1161 (perm ed 1975); and Restatement (Second) Agency §§ 352, 357.

as owner and lessor, but this is not necessarily inconsistent with the allegations that these defendants were active principals in the Salishan development and were personally negligent.

So far as the complaints disclose, plaintiffs' actions against the individual defendants stand on the same footing as their actions against the corporation. Defendants Colwell and Gray were not entitled, by virtue of their corporate offices, to have the demurrers sustained as to them.

Finally, defendants contend that, assuming a cause of action is stated by those plaintiffs who leased their lots directly from the developer, nevertheless, their demurrers should have been sustained as to those plaintiffs, five in number, who hold their lots by assignment from the original lessees. Defendants contend that a duty to investigate and disclose "makes no sense in the absence of privity."

We have held above that the complaints of the original lessees are sufficient because under their allegations those plaintiffs might be able to prove that a reasonably prudent land developer would have discovered in the exercise of due care the unsuitability of the land by methods which a prospective lessee could not be expected to employ. Assuming that defendants had exercised reasonable care and had discovered that the land where plaintiffs' lots are located would erode away in the foreseeable future, there are several things defendants might have done. They might, for example, have abandoned their project entirely. They might have taken steps to stabilize the land before proceeding with the development. They might even have proceeded with the development but not without warning prospective lessees of the danger of future erosion.

One of the foreseeable consequences of a negligent failure to discover the danger at all and the resultant failure to take appropriate steps to guard against it is that some of the original lessees would assign their

leases of unsuitable lots to innocent third parties. That defendants did foresee the assignment of leases is clear from the original lease form, which prohibits assignment or sublease without the advance written consent of the lessor. In fact, those plaintiffs who are assignees of the original leases have alleged in their complaints that they leased their lots as a result of direct dealings with Salishan Properties or its agents.

■ It therefore appears that if defendants breached their duty to prospective lessees by failing to investigate and discover the unsuitability of this land for building lots, the plaintiff assignees were foreseeable members of the class to whom that duty was owed, and the harm they suffered could have been prevented by any of the several possible courses of action to which the discovery might have led. The complaints of those plaintiffs who are assignees of original lessees do not fail to state a cause of action.

Reversed and remanded for further proceedings.

**LINDE, J.,** concurring.

As I understand it, this case does not involve the issue of an implied warranty of fitness for use in the builder's sale or long-term lease of a building when the building itself proves unfit by virtue of a defect in the site on which it is built. Such a case would lie somewhere between *Yepsen v. Burgess,* 269 Or 635, 525 P2d 1019 (1974), and *Cook v. Salishan Properties,* 279 Or 333, 569 P2d 1033 (1977). Its decision can be reserved until the issue is squarely presented.

On that understanding, I concur in the present decision.

Lent, J., joins in this opinion.