Argued and submitted December 10, 1979, affirmed March 17, 1980

HICKS,
*Respondent,*
*v.*
LILLY ENTERPRISES, INC.,
*Appellant.*

No. 76-122L, CA 14187)

608 P2d 186

[211]

Gilbert B. Feibleman, Salem, argued the cause for appellant. With him on the brief was Ramsay, Stein & Feibleman, Salem.

Neal G. Buchanan, Klamath Falls, argued the cause and filed the brief for respondent.

Before Joseph, Presiding Judge, Richardson, Judge and Schwab, Chief Judge.*

RICHARDSON, J.

*Schwab, C.J., *vice* Lee, J., deceased.

## RICHARDSON, J.

Plaintiff, tenant, brought an action for unlawful eviction under ORS 91.815, for conversion of her personal property and for punitive damages against defendant, landlord. Defendant counterclaimed for past due rent and for overdue grocery bills. The jury found for plaintiff on both causes of action and awarded her $6,000 punitive damages in addition to general damage. The jury returned a verdict for plaintiff on defendant's counterclaim. Defendant's assignments of error all relate to the issue of punitive damages. Defendant first contends that there was insufficient evidence of malicious misconduct in converting plaintiff's property to submit the issue of punitive damages to the jury. The second claim of error contends the punitive damage allegation should have been withdrawn because there was no evidence submitted regarding defendant's financial worth. The third assignment alleges defendant's motion for new trial should have been granted on the ground that the verdict for punitive damages was the result of passion and prejudice.

The evidence was in considerable conflict on every material fact issue. For the purposes of determining the issues presented we view the facts most favorable to plaintiff, who is aided by the verdict. *Crooks v. Payless Drug Stores*, 285 Or 481, 592 P2d 196 (1979); *Lewis v. Devils Lake Rock Crushing Co.*, 274 Or 293, 545 P2d 1374 (1976).

Defendant is a family held corporation. Anita and William Lilly, husband and wife, are officers of the corporation. Defendant owns and operates a motel and a nearby retail grocery store. Mr. and Mrs. Lilly work in the motel and the store. Plaintiff and her uncle, Chester Watah, rented an apartment on a monthly basis in the motel and traded at the defendant's grocery store, where they were extended credit for grocery purchases. Watah owned a ranch outside of town and rented the room for lodging when he came in to town.

He stayed there on an irregular basis, while plaintiff resided in the room full time. Watah died prior to trial but subsequent to the events which precipitated the cause of action. Plaintiff was unemployed and had very little income and Watah assumed responsibility for the rent and the grocery bills. Sometime prior to the incidents involved in the cause of action a conservatorship had been set up for Watah's benefit. The procedure adopted for payment of the rent and grocery bills was for defendant to submit vouchers to the conservator for payment. Watah often carried large amounts of cash and would on occasion pay for groceries or rent in cash.

Sometime in early March, 1976, defendant requested that plaintiff and her uncle move from the motel because their drinking behavior and loud noises were the subject of complaints from other tenants. Arrearages in rent or grocery bills were not mentioned, and plaintiff assumed the bills were being paid by the conservator or by Watah in cash. Plaintiff had observed Watah sign a voucher in March, which was presented to him by defendant's bookkeeper.

Sometime around March 27 to 29, 1976, plaintiff left the motel for a short trip to a nearby city. She intended to be gone only two days. Prior to leaving she informed Mrs. Lilly where she was going and how long she intended to be gone. Watah was not staying in the room at that time and plaintiff asked a friend, Thornton Baker, to stay in the room while she was away. A day or two after plaintiff left, Baker went to the grocery store and when he returned to the apartment he found the door padlocked. Mr. and Mrs. Lilly refused his request to remove his personal property from the apartment. On March 30, 1976, defendant attached an eviction notice, based on nonpayment of rent, to the front door of the apartment and removed all of the personal property. The property was stored in a shed behind defendant's bookkeeper's house.

[214]

On March 30, 1976, during her return trip, plaintiff was involved in an automobile accident. She did not return to the apartment but stayed with some friends. On March 31, 1976, she telephoned Mrs. Lilly and informed her of the accident and her delayed return. Mrs. Lilly did not inform plaintiff that the apartment had been padlocked, her personal property removed or that an eviction notice had been attached to the door. Mrs. Lilly did not tell plaintiff that defendant was claiming past due rent or overdue grocery bills.

A day or so later plaintiff was informed by Baker of what had occurred. She went to the apartment and found the door was secured by a padlock. She talked to Mr. and Mrs. Lilly and was told her property would be returned when the past due rent and grocery bills were paid, plus a fee of $175 for packing and storing the property and compensation for damage to the apartment. Defendant was aware that plaintiff was unemployed, that she had little money and that all of her property had been in the apartment with the exception of the few items of clothing she had taken on her trip.

Plaintiff made repeated requests for return of the property taken from the apartment. Each time she was told it would be returned when the claimed charges were paid.

In June, 1976, plaintiff filed her complaint in this action and some of the property was returned. The items of property not returned included some guns, a cassette tape player and cassette tapes, items of sentimental value received as gifts or inherited from plaintiff's grandmother, a set of stereo speakers and the personal records and receipts of Chester Watah showing payments made to defendant. Plaintiff discovered the speakers had been attached to the stereo system in defendant's store.

The evidence presented on behalf of defendant, through the testimony of Mr. and Mrs. Lilly and the defendant's bookkeeper, was inconsistent with nearly

all testimony of plaintiff and Thornton Baker. Defendant's witnesses stated that after plaintiff left on her trip the apartment was broken into, that the door lock was repaired and could be unlocked with plaintiff's key and that the property in the apartment was removed and stored to protect it from theft. Defendant's witnesses testified that plaintiff was told on a number of occasions she could pick up her property but she did not do so, and that the property was not held as security for the past due bills or storage fees. The witnesses stated all the property removed from the apartment was returned with the exception of the speakers which had not been paid for by Watah. Plaintiff had testified she was present when Watah paid for the speakers in cash and received a receipt which was included in Watah's records.

Defendant's claim of error relates solely to the question of punitive damages. Defendant contends the claim for punitive damage should have been withdrawn from the jury on either of two separate grounds. The first contention is that there was no evidence of willful, malicious misconduct justifying punitive damages.

It has been well established that punitive damages can be recovered in an action for conversion. *Lewis v. Devils Lake Rock Crushing Co., supra, Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974). However, an award of punitive damages is not appropriate in every conversion case. In *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306, 27 ALR3d 1268 (1967), the Supreme Court described the basis of punitive damages:

> "Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the

nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard [of the rights of the victim]. * * * " 248 Or at 425.

The evidence in this case meets that standard. The jury could have found defendant wilfully converted some of plaintiff's property without a good faith belief it was entitled to have the property.[1] The evidence, viewed in a light most favorable to plaintiff, supports an inference that defendant's acquisition of the property and subsequent conversion of some items was not motivated by a desire to protect the property, contrary to the testimony of Mr. and Mrs. Lilly.

Defendant's second argument for withdrawal of the claim for punitive damages is that there was no evidence of defendant's financial worth. Defendant contends such evidence is a necessary predicate to the award of punitive damages. While the wealth of defendant is a relevant inquiry on the issue of punitive damages, *State ex rel Thesman v. Dooley*, 270 Or 37, 526 P2d 563 (1974); *Phelan v. Beswick*, 213 Or 612, 326 P2d 1034 (1958), it is not a necessary element. The evidence is relevant to allow the jury to assess punitive damages in an amount which would constitute a penalty in relation to defendant's wealth. The evidence can enure to the benefit of either party. If defendant's wealth is minimal, the jury may conclude a small assessment of punitive damages would properly penalize defendant. Conversely, if defendant's wealth is substantial, the jury may be convinced that a larger award is necessary. A defendant which presents no evidence of its financial worth cannot complain the jury did not have such evidence.

---

[1] Good faith is not a defense to a conversion action, but good faith may protect a defendant from assessment of punitive damages. *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, n 1, 545 P2d 1374 (1976).

Following the verdict, defendant moved for a new trial on the basis that the verdict for punitive damages was the result of passion and prejudice. ORS 17.610(5). Defendant argues the jury's rejection of its counterclaim for rent and grocery bills, in the face of uncontradicted evidence that plaintiff rented the apartment and bought groceries and that there were unpaid charges due, demonstrates the jury's verdict was infected with passion and prejudice against defendant. We disagree that the evidence on these points was uncontradicted. From the testimony of plaintiff the jury could conclude that Watah rented the apartment and authorized plaintiff to live there and maintain it for his use when he came to town. The jury would be entitled to infer from plaintiff's testimony that Watah paid the rental and grocery bills when due. The jury's verdict for plaintiff on defendant's counterclaim was supported by the evidence. There is no basis for concluding the punitive damage award was based on passion or prejudice.

Affirmed.