SALVAS,
*Respondent - Cross-Appellant,*

*v.*

McEUEN et ux,
*Appellants - Cross-Respondents.*

McEUEN et ux,
*Appellants - Cross-Respondents,*

*v.*

SALVAS,
*Respondent - Cross-Appellant.*

(E82-1615, E82-1565; CA A32057)

704 P2d 1166

Doyle L. Schiffman, Roseburg, argued the cause and filed the briefs for appellants - cross-respondents.

William C. Wolke, Roseburg, argued the cause for respondent - cross-appellant. With him on the brief was Luoma, Kelley, Wolke, Mays & Pollaczek, Roseburg.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff,[1] a buyer, sought rescission of a land sale contract. Defendants, the sellers, then brought a foreclosure action on the contract. The two actions were consolidated for trial. The parties stipulated that, if plaintiff did not prevail on his claim for rescission, defendants would be entitled to foreclosure. Thus, the only issue to be litigated was whether plaintiff was entitled to rescind the sale. The trial court concluded that he was. Defendants appeal from the resulting decree in favor of plaintiff. Plaintiff cross-appeals, seeking attorney fees in defendants' foreclosure action, a reversal of the court's award of an offset to defendants for damages to the residence in the rescission action and a recovery of road repair and plumbing costs. On *de novo* review, we reverse and remand on the appeal and affirm on the cross-appeal.

The subject property is a 50-acre parcel with frontage along the South Umpqua River. From the time defendants purchased the property in 1970 to the date when they sold it to plaintiff, the river bank had eroded approximately one foot per year. In 1976, defendants attempted to divert the water from the bank by digging a channel through an island in the river. In 1977, defendants' neighbors lost approximately 50 feet of their bank. In 1979, defendants listed the property for sale with a Roseburg real estate office. It was described as riverfront property, with two residences, a barn and an orchard. No mention was made of potential flooding or erosion.

Plaintiff contacted a real estate agent from Canyonville, who took him to see the property in September, 1980. Plaintiff is confined to a wheelchair. However, with the help of defendant's caretaker, he was able to go down to the river. The evidence is that the bank was cut, with rocks and roots exposed, and that that is an indication of recent erosion. Plaintiff testified that he could see that the river bank was very steep. He testified credibly that he either did not pay attention to the cut bank or did not appreciate the significance of it. At the time he viewed the property, the river was only

---

[1] We refer to the parties as they were designated by the trial court, although, in the technical sense, each appears as plaintiff and defendant in this consolidated proceeding.

about a foot deep and 20 feet below the level of the house. Plaintiff was unfamiliar with western Oregon winters and had no background that would have alerted him to potential flooding. Plaintiff returned to the property with his son, who accompanied him down to the river once again.

Plaintiff made an offer on the property, which was accepted, and the transaction closed on September 20, 1980.[2] At that time, there were 200 feet between the main residence and the river bank.

The record is clear that, before the closing, plaintiff never asked about the effect of the river on the property or whether the property was subject to flooding or erosion. Defendants did not meet plaintiff before the closing and did not discuss flooding or erosion with him.

Within two weeks after closing, defendant James McEuen went to the property to collect the down payment and to show plaintiff the spring and water pump. He also showed plaintiff the channel that he had dug through an island on the river and suggested that plaintiff continue that project. Plaintiff replied that he did not think that would be necessary. No mention was made at that time of erosion or flooding. In the winter of 1980-81, the river flooded and eroded approximately one foot of the bank. Plaintiff testified that that was the first time that he became aware of erosion, although he had become aware of the flooding problem soon after the sale closed. In the winter of 1981-82 the river flooded again and took 30 feet of the bank. In March, 1982, plaintiff declared his intention to rescind the contract.

Plaintiff's theory is that defendants had a duty to advise him of the potential for flooding and erosion and that the property was not suitable for his intended use, that he entered into the contract not knowing of the erosion, and that—because of these things—he is entitled to rescission. Defendants argue that this is not a proper case for rescission because, among other things, they had no knowledge of the seriousness of the erosion problem and therefore had no duty to advise plaintiff.

---

[2] The Canyonville real estate agent, who was a long-time resident of the area, represented plaintiff's interests in the negotiations.

In *Gill v. Marquoit,* 269 Or 581, 585, 525 P2d 1030 (1974), the Supreme Court held that a seller of real property is not required to disclose that the land is not suitable for the purchaser's intended purpose unless

> "(1) the seller knows or has reason to know that the purchaser is buying the land for a specific use and that such use is not feasible because of the character of the land; (2) the seller knows or has reason to know that the purchaser does not know of the character of the land rendering it unsuitable; and (3) the purchaser does not have equal opportunities for obtaining information which he may be expected to utilize." (Footnotes omitted.)

Here, defendants were aware that plaintiff intended to use the property as his residence and also intended to make use of the barn and orchard. The evidence does not show, however, that defendants were aware that the property was not suitable for those purposes; they had, in fact, been using it in that manner themselves and had never experienced the serious erosion which later occurred. Defendants did not meet plaintiff until the closing. They did not know his background and had no reason to believe that he was unaware of the nature of the property. He had an adequate opportunity to discover that the property was naturally subject to flooding and erosion. By his own testimony, his physical disability did not prevent him from viewing the property. In fact, he had inspected it twice. If he had asked, he would have learned as much about the property as was known at the time: that it was subject to annual flooding and the loss of approximately one foot of bank per year to erosion. As the court stated in *Gill v. Marquoit, supra,* 269 Or at 586:

> "* * * In addition, there was no evidence to show that plaintiffs were aware that defendants were unaware of the susceptibility of the land to flooding. Indeed, and this is a factor of principal importance here, plaintiffs, in the absence of something to suggest otherwise, were entitled to assume that defendants would, along with other inquiries usually made by those purchasing land, find out whether the adjacent river overran its banks. It is a matter of common knowledge that many rivers in Oregon frequently rise above their banks during the rainy season. The occurrence is so common that ordinarily a seller may assume that the purchaser knows, or if he does not know, he will find out whether the action of a neighboring river will affect the land being purchased."

*See also Beri, Inc. v. Salishan Properties, Inc.,* 282 Or 569, 579, 580 P2d 173 (1978). Because defendants were under no duty to disclose the fact that the property was subject to erosion and flooding, rescission was not proper.[3]

Defendants raise several assignments of error, which, in view of our holding, we need not address. Because we reverse the trial court, it is also unnecessary for us to discuss the questions raised by plaintiff's cross-appeal, which are based on the judgment granting rescission.

Reversed on appeal; remanded for entry of judgment for defendants on their foreclosure action; affirmed on cross-appeal.

---

[3] Defendants make several other arguments against rescission, including that plaintiff did not promptly disaffirm the transaction. Because *Gill v. Marquoit, supra,* so clearly disposes of plaintiff's contention regarding the duty of disclosure, we do not discuss the alternative arguments.