Argued January 14; reversed April 14, 1931

# MUELLHAUPT *v.* JOSEPH A. STROWBRIDGE ESTATE CO. ET AL.

(298 P. 189)

*James W. Crawford* and *J. P. Kavanaugh,* both of Portland (Bowerman & Kavanaugh, of Portland, on the brief), for appellant.

*John F. Logan* and *Isham N. Smith,* both of Portland, for respondents.

114

■ KELLY, J. The first question we will determine is whether the lower court erred in sustaining the demurrer of defendant, the Joseph A. Strowbridge Estate Company, a corporation, to the third amended complaint. This being a case wherein part of the relief sought consists in the cancellation of certain corporate stock issued to defendants, Strowbridge, and the reissuance thereof to plaintiff, the corporation is an indispensable party defendant: *St. Louis & S. F. R. Co. v. Wilson,* 114 U. S. 60 (5 S. Ct. 738, 29 L. Ed. 66); *Crump v. Thurber,* 115 U. S. 56 (5 S. Ct. 1154, 29 L. Ed. 328).

Moreover, an accounting is sought which pertains to the assets and transactions of the corporation. We,

therefore, hold that the lower court erred in sustaining the corporation's demurrer to plaintiff's third amended complaint.

■ As to the alleged agreements of plaintiff, her mother and her brother, George H. Strowbridge, to make mutual wills, the testimony in support of plaintiff's claim in that regard is confined to plaintiff's own testimony, the testimony of Dr. McMerdo, that, while in professional attendance upon plaintiff's mother, she told him of such an agreement; and the further fact that George H. Strowbridge actually executed his will in favor of plaintiff and her mother. The witnesses named by plaintiff, as having attested her will and that of her mother, are unable to remember such attestation. One of these alleged witnesses, Judge Charles H. Carey, is an attorney, who, plaintiff claims, prepared the three wills. Judge Carey is unable to remember that he ever prepared such wills. Moreover, plaintiff accepted a deed to the home property executed by the corporation after the death of her mother, said home property having been part of her mother's estate when the alleged agreement to make mutual wills is said to have been made. This is inconsistent with plaintiff's contention that plaintiff herself owned the property by virtue of the alleged agreement concerning mutual wills. Without discussing other features of the testimony on this phase of the case, we hold that the alleged agreement concerning mutual wills to be executed by plaintiff, her mother and her brother George H. Strowbridge has not been proven. It is therefore unnecessary to decide whether plaintiff received one-fourth of her mother's stock by inheritance or by virtue of the alleged transfer thereof to defendant Joseph A. Strowbridge, Jr., in trust to be equally divided among the four surviving children.

It is urged by the answering defendants, in explanation of plaintiff having 12½ shares formerly owned by George H. Strowbridge, that the same was pledged to her as security for a loan of $6,000 to the corporation. It is stated, however, in the answering defendants' amended answer that this loan was paid July 18, 1921; and that plaintiff retained said stock until April 25, 1923.

The purported corporate minutes of January 22, 1923, expressly state that at that time plaintiff was the owner of 46⅞ shares of stock. Defendant J. A. Strowbridge testified that George H. Strowbridge told him that he, George H. Strowbridge, had transferred his stock to plaintiff and her mother in equal shares: Transcript of testimony, p. 220.

■ A careful consideration of the circumstances of this case, as disclosed by the evidence, in the light of the pleadings of the respective parties, leads us to the conclusion that at the death of George H. Strowbridge plaintiff was and ever since has been entitled to the 12½ shares of the stock in said corporation, being one-half of the stock originally issued to the said George H. Strowbridge; and that at the death of her mother plaintiff was and ever since has been entitled to an additional 9⅜ shares, being her distributive portion of the stock originally issued to Mary B. Strowbridge as the stock owned by her in her own right and the stock transferred to Mary B. Strowbridge by George H. Strowbridge.

In determining whether such fraud has been proven as to invalidate the surrender of plaintiff's stock, we fully realize that the innocent may be affected; but the record discloses that one of the defendants, while

sane, falsified the records of the corporation and tortiously converted many thousands of dollars. The record also discloses that plaintiff had confidence in and trusted this defendant and her other brothers. This conversion of funds was wholly unknown to plaintiff when she surrendered the stock in question. Three phases of the defaulting defendant's relation to the corporation present themselves: one concerning a note for $7,380; another, because of the shortage reported by accountant Rae in the sum of $24,377.13; and the third on account of the further and earlier shortage in the sum of $15,395.62 reported by accountant Tourtellette through witness J. T. Pasquill. Plaintiff had no knowledge or notice of these transactions or any of them when she surrendered her stock. It is stipulated that at the time of such surrender of stock by plaintiff defendant Alfred B. Strowbridge was sane. Quoting from the transcript of testimony, page 701:

"Mr. Kavanaugh: I will tell you now that I intend to show, I intend to show that he was sound physically and mentally at that time (time of examination of life insurance), if you will admit that.

"Mr. Logan: I will admit that so far as the record shows he was sound—so far as the record shows.

"Mr. Kavanaugh: The record in this court is that he was insane from June, 1926. That is all you claim for it, is it?

"Mr. Logan: That is all we claim."

The conclusion is irresistible that one of the defendants participating in the transaction involved, by which transaction all answering defendants profited and in whom plaintiff reposed confidence, concealed from plaintiff and failed to reveal to plaintiff a state of affairs, which, if known to her, would have had a

122

strong tendency to cause her, as a reasonably prudent person, to decline to make the requested surrender of stock.

Defendant Henry J. Strowbridge was asked:

"At the time that that transfer was made you didn't know anything about any irregularities in the business, did you?"

To which he answered:

"I certainly did not or I wouldn't have accepted it," etc. Transcript, pp. 859-60.

We are impressed with the improbability that on January 22, 1923, plaintiff took such action in regard to her stock as the purported corporate minutes of that date indicate. The stock was not surrendered, until April 25, 1923. Naturally, plaintiff's approaching marriage would have been considered and discussed by the brothers as an event justifying a readjustment of the stockholders' interests. This event was not made known in January of that year. The announcement of plaintiff's approaching marriage was made about three weeks before it occurred: Transcript of testimony, p. 1073. The date of her wedding is May 10, 1923.

■ The transfer of plaintiff's stock on April 25, 1923, was induced by an erroneous belief, on plaintiff's part, as to the condition of the corporate affairs, which belief, in part, was engendered by the concealment from plaintiff and the failure to reveal to her the truth in respect thereto by at least one of her brothers, whose moral and legal duty it was, under the admitted circumstances of kinship and confidence, to make full and complete disclosure to plaintiff. This vitiated the transaction and rendered it invalid.

Answering defendants cite: *Cohen v. Maus,* 297 Pa. 454 (147 Atl. 103); *Davenport v. Newton,* 71 Vt. 11 (42 Atl. 1087); *Fanning v. Osborne,* 102 N. Y. 441 (7 N. E. 307); 4 Fletcher, Corporations, 3774, § 2536; 2 Machen, Corporations, §§1642, 1644; *Burckhardt v. N. W. Nat. Bank,* 38 Fed. (2d) 568; *Pelton v. Gold Hill Canal Co.,* 72 Or. 353 (142 P. 769).

These cases announce the rule that a director of a corporation is not individually liable for torts of the corporation in which such director did not participate.

In the case of *Cohen v. Maus,* supra, the director participating in the tort was held amenable.

*Davenport v. Newton,* supra, and *Fanning v. Osborne,* supra, are cases wherein the directors sought to be charged, did nothing by participation or advice to make the wrongful acts their own.

In *Burckhardt v. U. S. Nat. Bank,* supra, certain stockholders, not sustaining the fiduciary relations of kinship and personal trust and confidence, sought relief against directors not shown personally to have profited by the transaction.

*Pelton v. Gold Hill Canal Co.,* supra, is a case instituted to recover the value of wheat stored in the warehouse of a foreign corporation. In the opinion we find this statement:

"There is nothing to indicate that the directors, or any of them, had personal knowledge or information as to the deposit of the grain in question until long after it had been ground and disposed of. In fact, the testimony indicates that they were entirely ignorant of the deposit or conversion until long after the grain had been sold." p. 360.

In the case at bar, the answering defendant had knowledge of the transfer of plaintiff's stock at the

time it was transferred, and each of them individually profited thereby. It would be inequitable to permit answering defendants to retain the stock thus procured.

■ The subsequent settlement with defendant Alfred B. Strowbridge, at which time plaintiff was represented by Judge Charles H. Carey, was made before the defalcations reported by Mr. Rae were known to plaintiff or Judge Carey. When these other defalcations were reported by Mr. Rae, plaintiff declined to approve any settlement thereof and since then no settlement thereof has been approved by her. In this state of the case, plaintiff is not deprived of her right to rescind the transfer of her stock and to insist upon its reissuance to her. It is true that plaintiff was a director of the corporation, had access to its records, and at one time remained in its office for several weeks during the absence of Joseph A. Strowbridge, Jr., but this does not destroy the obligation resting upon her brothers in whom she reposed implicit confidence, each of whom was more experienced in business methods than plaintiff and one of whom is an attorney at law, fully to disclose to her all the facts known to them with reference to the corporate affairs when taking from her the stock in question.

■ We can not concur with defendants' construction of the agreement dated July 8, 1903, and executed by the children and widow of Joseph A. Strowbridge, Sr. This agreement, dated July 8, 1903, provides:

"After (payment of) all taxes, liens, improvements, costs of administration and other expenses that from time to time shall be levied against said estate, the balance or remainder that shall be left is to be divided and distributed equally, share and share alike, to said mother and children aforesaid, and to their heirs of their body."

The estate was fully settled on March 28, 1904. It is alleged in the third amended complaint (par. 5), and admitted in answering defendants' amended answer thereto (par. 5):

"That the entire property of said estate, both real and personal, was distributed to the widow and five children of said deceased share and share alike, each receiving an undivided one-sixth of said estate, in accordance with an agreement entered into by said widow and children," etc.

No other agreement appears in the record executed by these parties; hence, we conclude that this distribution carried out and consummated the agreement of July 8, 1903.

The practical construction given to this last named agreement by the parties thereto, as well as the express terms thereof as quoted, refutes the idea that such agreement imposed a perpetual restriction upon any transfer which would render unequal the respective interests of stockholders in a corporation not yet formed.

Answering defendants allege that 12½ shares of stock, in addition to the 25 shares originally issued to plaintiff, were pledged to plaintiff as security for a loan. This would have been a futile gesture if perpetual equality of interest on the part of each stockholder was imperative.

■ The funeral expenses of George H. and Mary B. Strowbridge were advanced by plaintiff and afterwards paid to plaintiff from the funds of the corporation. As to the estate of Mary B. Strowbridge, there is nothing inconsistent in this with the distribution of said estate to the four children in equal shares, or in plaintiff's equal participation as one of the cestui que trustent under the transfer claimed by defendants to

have been made by their mother to J. A. Strowbridge in trust for the four children, except that plaintiff thereby defrayed more than her share of such expense.

■ As to the estate of George H. Strowbridge, it is evident that plaintiff relied upon the advice of her brothers and did not know that the effect of the course pursued might be to constitute a waiver of her rights. This payment by the corporation may be adjusted by an accounting.

■ We have not overlooked the fact that, since the disclosures of the Rae and Tourtellette audits, plaintiff has been the recipient of money from the corporation, but the record discloses an offer on her part to return the same; and the defenses interposed herein support the conclusion that a return thereof would not be accepted; hence, plaintiff can not be held to have ratified the acts of defendant so as to estop her from prosecuting this or other suits or proceedings; nor should she thereby be held to have waived her rights herein.

As stated, this case has been submitted with another case upon one transcript of testimony. In the companion case, all of the defendants joined issue upon the facts. In respect to the reissue of plaintiff's stock, the cancellation upon the corporate books of the stock issued in lieu thereof, and an accounting, the relief sought herein may be afforded in that other case, unless the defendant corporation interposes a tenable defense thereto.

It is ordered that the judgment and decree of the lower court be reversed; that a decree be entered declaring that at the date of the death of George H. Strowbridge on May 31, 1912, plaintiff became and ever since has been the owner of 12½ shares of stock

in the Joseph A. Strowbridge Estate Company, a corporation, which said 12½ shares of stock theretofore belonged to said George H. Strowbridge; that upon the date of the death of Mary B. Strowbridge on August 4, 1916, plaintiff became and ever since has been the owner of 9⅜ shares of stock in said corporation being one-fourth of the stock therein theretofore owned by Mary B. Strowbridge; that upon the formation thereof plaintiff became and ever since has been the owner of 25 shares of stock in said corporation, plaintiff's stock therein now aggregating 46⅞ shares thereof; that said attempted transfer and cancellation of plaintiff's stock occurring in April, 1923, was and is and is hereby decreed and declared to have been and to be invalid; that plaintiff recover judgment against defendants Strowbridge for her costs and disbursements in the circuit court and in this court; and that the judgment and decree hereby rendered herein is and is hereby declared and decreed to be without prejudice to plaintiff's right to an accounting and recovery thereupon, or to an order appointing a receiver of said defendant corporation; or to any other right or privilege enforceable in law or equity.

ROSSMAN, J., did not participate in this decision.

RAND, J., dissents.