254 October 2, 2014 No. 64

IN THE SUPREME COURT OF THE
STATE OF OREGON

Antonio CORTEZ,
*Respondent on Review/*
*Cross-Petitioner on Review,*

*v.*

NACCO MATERIAL HANDLING GROUP, INC.,
a Delaware corporation,
assumed business name Hyster Company;
and Papé Material Handling Inc.,
an Oregon corporation,
fka Papé Lift, Inc.,
assumed business name Hyster Sales Company,
*Defendants,*

*and*

SWANSON GROUP, INC.,
an Oregon corporation,
*Petitioner on Review/*
*Cross-Respondent on Review.*
(CC 0503-02632; CA A144045; SC S060604)

En Banc

On review from the Court of Appeals.*

Argued and submitted April 30, 2013.

Matthew J. Kalmanson, Hart Wagner, LLP, Portland, argued the cause and filed the briefs for petitioner on review/cross-respondent on review. With him on the briefs was Janet M. Schroer.

Robert K. Udziela, Portland, argued the cause for respondent on review/cross-petitioner on review. J. Randolph Pickett, Pickett Dummigan LLP, Portland, filed the brief for respondent on review/cross-petitioner on review. With him on the brief were R. Brendan Dummigan, Kristen West and Kimberly O. Weingart of Pickett Dummigan LLP, Peter O. Hansen of Hanson & Malagon, and Robert K. Udziela.

_____

* Appeal from Multnomah County Circuit Court, Michael H. Marcus, Judge. 248 Or App 435, 274 P3d 202 (2012).

W. Michael Gillette, Schwabe, Williamson & Wyatt, P.C., Portland, filed the brief for amicus curiae Associated Oregon Industries. With him on the brief was David Anderson.

KISTLER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.**

Plaintiff worked for a lumber mill, Sun Studs, LLC. One evening while he was walking from one area of the mill to another, a forklift hit and severely injured him. After receiving workers' compensation benefits, plaintiff brought this action against Swanson Group, Inc., which owns Sun Studs, as well as other defendants. Plaintiff alleged that Swanson was liable for negligently failing (or for negligently failing to require Sun Studs) to provide a safe workplace and for failing to provide competent safety personnel. Plaintiff also alleged that Swanson was liable under the Employers Liability Law (ELL), which requires employers to take certain safety measures. Swanson moved for summary judgment, and the trial court granted its motion on the ground that the workers' compensation statutes provided the exclusive remedy for plaintiff's injuries. The court entered a limited judgment in Swanson's favor.

The Court of Appeals affirmed the trial court's judgment regarding plaintiff's ELL claim, reversed its judgment regarding plaintiff's negligence claim, and remanded the negligence claim for further proceedings. *Cortez v. Nacco Materials Handling Group*, 248 Or App 435, 274 P3d 202 (2012). The court held that neither the workers' compensation statutes nor a statute immunizing limited liability company members and managers barred plaintiff's claims against Swanson. *Id.* at 441-43, 445. Turning to the merits of plaintiff's claims, the Court of Appeals held that the allegations in plaintiff's complaint stated a negligence claim but that plaintiff did not have a claim against Swanson under the ELL. *Id.* at 447-49. We allowed the parties' cross-petitions for review and now reverse the Court of Appeals decision. We affirm the trial court's judgment regarding plaintiff's negligence claim, reverse its judgment regarding plaintiff's ELL claim, and remand the ELL claim to the trial court for further proceedings.

Because Sun Studs is currently organized as a limited liability company (LLC), we discuss that form of organization briefly before setting out the facts. An LLC is a relatively new form of business organization. *See* Larry

E. Ribstein & Robert R. Keatinge, 1 *Ribstein and Keatinge on Limited Liability Companies* § 1.2 (2012) (explaining that the first limited liability company act was passed in 1977). The persons who own an LLC are its "members." ORS 63.001(21). The members can manage the LLC themselves, or they can appoint a manager or group of managers to manage the company. ORS 63.001(19), (20). The statutes accordingly distinguish between member-managed and manager-managed LLCs. *See Synectic Ventures I, LLC v. EVI Corp.*, 353 Or 62, 65 n 1, 294 P3d 478 (2012) (discussing that distinction).[1]

LLCs share many attributes of limited partnerships, but they differ from that form of business organization in at least one respect: in Oregon, a "member or manager [of an LLC] is not personally liable for a *** liability of the [LLC] solely by reason of being or acting as a member or manager." ORS 63.165(1). By contrast, in Oregon, a limited partner will become personally liable for the limited partnership's obligations if the limited partner "participates in the control of the business." ORS 70.135; *see* Ribstein and Keatinge, *Limited Liability Companies* § 1.6 ("Unlike limited partners, LLC members do not lose their limited liability for participating in control of the business.").

With that background in mind, we turn to the facts of this case.[2] In 2001, Swanson Group, Inc., purchased a lumber mill, Sun Studs, Inc.*,* and reorganized that business as a limited liability company.[3] Swanson is the sole member of Sun Studs, LLC, and it elected to manage Sun Studs, making Sun Studs a member-managed LLC. Sun Studs is one of several timber-related LLCs that Swanson owns and manages. Swanson sets general policies and priorities for those LLCs. Sun Studs, like the other LLCs that Swanson owns, has its own employees, who are responsible for the day-to-day operation of the mill and also for implementing Swanson's general directives.

---

[1] The persons appointed as the managers of a manager-managed LLC may but need not be members of the LLC. ORS 63.001(19).

[2] To the extent the facts are disputed, we set out those facts in the light most favorable to plaintiff, the party opposing summary judgment.

[3] Unless otherwise specified, the phrase "Sun Studs" refers to Sun Studs, LLC, rather than Sun Studs, Inc.

Regarding safety, Swanson provided the LLCs that it owned with a safety manual, which stated general policies and served as a "template" that each LLC could customize to its particular operations. Swanson delegated day-to-day responsibility for safety at Sun Studs to Sun Studs' mill manager and HR director. Specifically, Swanson delegated responsibility "to [Sun Studs' mill manager and HR director] to carry out the safety program and to follow as close as they can the template provided by [Swanson]." It was "up to [Sun Studs' mill manager and HR director] to identify and rectify any safety violations or unsafe workplace issues or safety hazard type issues" at the worksite.

Ash was Swanson's HR director and supervised his counterpart at Sun Studs. Swanson's executive vice president explained the relationship between Ash and Sun Studs' HR director:

> "So the practical way it works is that Mr. Ash would provide what I would say is oversight in the overall direct setting: [Ash would tell Sun Studs HR director,] [y]ou need to have these types of programs. Here's the steps you need to take to implement. Here's the things you need to do. Here's the programs you need to ensure you've implemented. I'm here at this point if you [Sun Studs' HR director] need any help. Or if you want any support on your safety committee meetings or in your training sessions, then I'll [Ash] help you with that."

Harris was Swanson's vice president of operations. In that capacity, Harris supervised Sun Studs' mill manager. Swanson's executive vice-president explained the relationship between Harris and Sun Studs' mill manager:

> "Mr. Harris was more of: You need to make sure you're doing what you have got to do safety-wise. You need to make sure that you're compliant. I'm going to be checking on you and making sure that I'm satisfied with your efforts in the safety program and the safety process."

Swanson's executive vice-president explained that the "[p]rimary responsibility for safety" rested with Sun Studs' HR director and mill manager.

Ash and Harris conducted periodic performance reviews of Sun Studs' managers. Ash and Harris also served

as a resource to whom Sun Studs' HR director and mill manager could turn if they had a problem that required "corporate level upper-end" decision-making. On one occasion, Ash attended a safety committee meeting at Sun Studs to ensure that Sun Studs' supervisors did not need any help or further assistance. Otherwise, Swanson executives did not visit Sun Studs to monitor safety conditions or set safety policy. If Ash or Harris observed a safety violation when either of them was on Sun Studs' worksite, each person had authority to direct Sun Studs to correct the violation.

In this case, plaintiff suffered severe injuries one evening when another Sun Studs employee drove a forklift down a dark corridor and accidently hit him. Plaintiff filed a claim for and received workers' compensation benefits from Sun Studs. He then filed this action against Swanson, as well as other defendants.[4] Plaintiff alleged in his amended complaint that Swanson was negligent in the following ways:

"(a)   In failing to prevent violation [*sic*] of the requirements of the Oregon Occupational and Safety and Health Code as enacted by the department of Consumer & Business Services;

"(b)   In failing to properly inspect the place where the plaintiff was required to work;

"(c)   In failing to provide competent safety personnel to inspect the work site;

"(d)   In failing to require Sun Studs, LLC to have available an appropriately marked crosswalk to cross a working yard at night in safety;

"(e)   In failing to require Sun Studs, LLC to provide appropriate yard lighting so that pedestrians could be seen;

"(f)   In failing to require Sun Studs, LLC to provide fluorescent work vests for better visibility of pedestrians;

"(g)   In failing to require Sun Studs, LLC to provide forklifts equipped with audible and visual movement and backup alarms;

---

[4] Because this case arises from a limited judgment resolving plaintiff's claims against Swanson, we do not discuss plaintiff's claims against the other defendants, which manufactured, sold, and serviced the forklift that hit plaintiff.

"(h)   In failing to furnish safe machinery, equipment, appliances, and instrumentalities for the use of employees;

"(i)   In failing to see that the machinery equipment and appliances instrumentalities for the use of employees were inspected and maintained in safe condition; and

"(j)   In failing to warn plaintiff of hazards or danger[s] when having actual knowledge or in the exercise of reasonable care would have had knowledge of hazards or dangers that would not be apparent to plaintiff."

Plaintiff also claimed that Swanson had violated the ELL, based on similar allegations.[5]

Swanson moved for summary judgment.[6] Swanson argued that it was immune from liability under either a statute that provides immunity to LLC members and managers, ORS 63.165(1),[7] or under the statute that provides that workers' compensation is the exclusive remedy for certain workplace injuries, ORS 656.018 (2011).[8] Plaintiff responded that neither ORS 63.165(1) nor ORS 656.018 (2011) immunized Swanson from liability under the ELL and negligence law. Additionally, in response to Swanson's summary judgment motion, plaintiff introduced evidence that, in his view, permitted a reasonable juror to infer that Swanson retained control over job safety at Sun Studs and that Swanson negligently failed to require that Sun Studs take certain safety precautions.

---

[5] Plaintiff alleged one other claim for relief against Swanson. Plaintiff conceded that claim, and the trial court granted summary judgment on that claim in Swanson's favor. Plaintiff does not challenge that ruling.

[6] Swanson moved for summary judgment twice. The trial court denied the first motion but granted the second. The latter ruling gave rise to this appeal.

[7] ORS 63.165(1) provides

"The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager."

[8] We set out the text of ORS 656.018 (2011) later in the opinion and summarize its terms here. Briefly, ORS 656.018(1) (2011) provided that employers that provide workers' compensation benefits to their employees are immune from further liability for their employees' workplace injuries. ORS 656.018(3) (2011) extended the immunity provided in subsection (1) to, among others, an employer's officers, directors, and insurers. Subsection (3) did not extend that immunity expressly to LLC members and managers.

The trial court ruled that the evidence on summary judgment would permit a reasonable juror to find that Swanson had been negligent and that it had violated the ELL. The trial court also ruled that ORS 63.165(1) did not shield Swanson from liability as the managing member of Sun Studs. The trial court concluded, however, that ORS 656.018 (2011), the exclusive remedy provision of the workers' compensation statutes, granted immunity to both Sun Studs (plaintiff's employer) and also Swanson (Sun Studs' member-manager). The trial court granted Swanson's summary judgment motion on that ground and entered a limited judgment in Swanson's favor.

The Court of Appeals affirmed the trial court's judgment regarding plaintiff's ELL claim, reversed its judgment regarding plaintiff's negligence claim, and remanded for further proceedings on the negligence claim. The court held that neither ORS 656.018 (2011) nor ORS 63.165(1) shielded Swanson from liability. *Cortez*, 248 Or App at 443, 446. Regarding ORS 656.018 (2011), the Court of Appeals reasoned that that subsection (1) of that statute immunized employers (including LLCs) from liability for their employee's workplace injuries but that subsection (3) of that statute did not extend that immunity to LLC members. *Id.* at 441-43. Regarding ORS 63.165(1), the court reasoned that that statute protected LLC members and managers only from vicariously liability for the LLC's obligations and, as a result, did not shield LLC members and managers from personal liability for their own acts.

Considering the merits of plaintiff's claims, the court concluded that the allegations in plaintiff's amended complaint stated a negligence claim against Swanson. *See* 248 Or App at 445. The Court of Appeals did not address Swanson's argument that "plaintiff [had] failed to present sufficient facts [on summary judgment] to establish his negligence claim" because it determined that Swanson had not made that argument to the trial court. 248 Or App at 449.[9] Finally, the court held that plaintiff had no ELL claim

---

[9] We reach a different conclusion. Not only did plaintiff argue in the trial court that the evidence that he had submitted in response to Swanson's summary judgment motion permitted an inference that Swanson had been negligent, but Swanson responded in its reply that, "[e]ven when viewed in the light most

against Swanson because Swanson was not a person "having charge of, or responsibility for, any work involving a risk or danger to [plaintiff]." *Id.* at 446.

Swanson petitioned for review of the Court of Appeals decision reversing the trial court's judgment regarding plaintiff's negligence claim. Plaintiff cross-petitioned for review of the Court of Appeals decision affirming the trial court's judgment regarding his ELL claim. We allowed both parties' petitions. Before turning to the various issues that the parties raise on review, we note a legislative change that affects the sequence in which we consider those issues. After oral argument, the legislature amended ORS 656.018(3) to provide that that subsection extends immunity to LLC members. Or Laws 2013, ch 488, § 1.[10] Because the 2013 amendment applies only to claims arising on or after June 24, 2013, *see id.* § 2, it does not apply to plaintiff's claims against Swanson, which arose before the amendment's effective date.

Although the 2013 amendment does not resolve plaintiff's claims against Swanson, it does affect the order in which we consider the issues that Swanson has raised on review. As a result of the 2013 amendment, our resolution of one of those issues—whether the pre-2013 exclusive remedy provision of the workers' compensation statutes applied to LLC members—will affect only a small number of persons (Swanson and any other LLC member facing a workplace injury claim that arose before June 24, 2013). The other statutory immunity issue that Swanson raises has greater significance, however. It affects *all* claims brought against LLC members and managers, except for workplace injury claims that arise on or after June 24, 2013. We accordingly begin with Swanson's arguments regarding ORS 63.165(1),

favorable to Plaintiff, none of the evidence in the summary judgment record supports Plaintiff's claims for relief." Beyond that, because the parties submitted evidence on the merits of plaintiff's negligence claim in support of and opposition to Swanson's summary judgment motion, Swanson was free to argue in the Court of Appeals that the trial court's ruling on that claim was "right for the wrong reason." *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (explaining when an appellate court may affirm under the "right for the wrong reason" doctrine).

[10] The 2013 amendment added LLC members but not LLC managers to the list of exempt entities in ORS 656.018(3). Or Laws 2013, ch 488, § 1.

which provides that an LLC member or manager is not personally liable for the LLC's debts, obligations, and liabilities solely by reason of being or acting as a member or manager.

## I.  ORS 63.165(1)

The parties' arguments on this issue frame the factual and legal questions that we must resolve. Swanson's argument assumes that plaintiff has a colorable negligence claim against Sun Studs for failing to provide a safe workplace.[11] Swanson does not dispute that a reasonable juror could infer from the evidence on summary judgment that Sun Studs was negligent in failing to have appropriately marked crosswalks, in failing to provide adequate lighting, in failing to require workers to wear fluorescent vests, and in failing to have forklifts equipped with audible and visual movement and backup alarms. Swanson also does not dispute that a reasonable juror could infer from the evidence on summary judgment that it had the authority, as the member-manager of Sun Studs, to require Sun Studs to provide safer conditions. Swanson notes, however, that ORS 63.165(1) shields LLC members and managers from personal liability for "acting" as a member-manager.[12] Swanson reasons that, under ORS 63.165(1), "merely having the authority to require the LLC to prevent a workplace accident *** is not sufficient for personal liability to attach to a managing-member for every act of negligence that arises out of the operations of the LLC's business."

Swanson argues that it will be liable as Sun Studs' member-manager only when an officer or director of a corporation would be liable for a corporate employee's negligence—that is, only if Swanson "actively participated" in Sun Studs' negligence. Swanson contends that the evidence

---

[11] Of course, the exclusive remedy provision of the workers' compensation statute bars plaintiff, as a statutory matter, from suing Sun Studs and its employees for negligently causing his workplace injury. *See* ORS 656.018(1),(3).

[12] An LLC member can be a passive owner of the LLC, much like a corporate shareholder. Alternatively, an LLC member can manage the LLC either in a member-managed LLC or in a manager-managed LLC, if the member is designated as the manager of the manager-managed LLC. Ribstein and Keatinge, *Limited Liability Companies* § 2.3. We assume that the issues that arise from extending immunity to LLC members and managers for "acting" in those capacities primarily will involve persons (whether members or managers) who manage the LLC.

on summary judgment does not permit an inference that it either actually knew of the conditions at Sun Studs that allegedly led to plaintiff's injuries or that it actively participated in the creation of those conditions.

Plaintiff takes a different view of both ORS 63.165(1) and the evidence. He argues that the sole function of ORS 63.165(1) is to make clear that LLC members and managers are immune from vicarious liability for the LLC's debts, obligations, and liabilities. Plaintiff reasons that, to the extent a member or a manager is independently liable to an employee or a third party, ORS 63.165(1) provides no protection from that liability. As a corollary to that argument, plaintiff contends that the evidence on summary judgment permits a reasonable juror to infer that Swanson's negligence led to plaintiff's injury; specifically, plaintiff argues that a reasonable juror could infer that Swanson "retain[ed] control over job site safety" and, having retained control, failed to provide (or to require Sun Studs to provide) a safe workplace.

In considering those issues, we begin with the statutory interpretation question that the parties raise—the extent to which ORS 63.165(1) immunizes Swanson for its actions or failures to act in managing Sun Studs. Because we agree with plaintiff that ORS 63.165(1) immunizes Swanson only from vicarious liability for the LLC's obligations, we also consider whether the evidence on summary judgment would permit a reasonable juror to hold Swanson liable for negligence.

A.  *Statutory Immunity under ORS 63.165(1)*

In interpreting ORS 63.165(1), we begin, as we customarily do, with the text and context of ORS 63.165(1) and then turn to that statute's legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

1.  *Text*

ORS 63.165(1) provides:

"The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally

> liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager."

In many respects, the two sentences in subsection (1) mirror each other. The first sentence provides that the "debts, obligations and liabilities" of an LLC are "solely" the debts, obligations, and liabilities of the LLC. The second sentence provides that a member or a manager of an LLC is not personally liable for the LLC's debts, obligations, and liabilities "solely by reason of being or acting as a member or manager" of the LLC. Each sentence makes clear, in a different way, that a member or a manager of an LLC is not vicariously liable for the LLC's debts, obligations, and liabilities, as a general partner will be vicariously liable for the partnership's obligations.

The use of the word "being" in the second sentence in ORS 63.165(1) is consistent with that interpretation. Merely "being" a member or manager does not make that person liable for the LLC's obligations. However, the use of the word "acting" in the second sentence interjects ambiguity into the text. On the one hand, "acting" could mean that a member or manager is not personally liable for any debts, obligations or liabilities of the LLC that arise solely by reason of the "actions" that a member or manager takes in that person's official capacity. Read broadly, the phrase "acting as a member or manager" would provide members and managers immunity not only from vicarious liability but also from personal liability for their actions in managing an LLC.

On the other hand, the word "acting" may play a more modest role. It may simply confirm that a member or manager of an LLC is not vicariously liable for the LLC's debts, obligations, and liabilities. Specifically, the word "acting" could serve to make clear that, unlike a limited partner who will become vicariously liable if he or she participates in the control of the business, a member or manager of an LLC will not be vicariously liable for actively managing the LLC's business. *Cf.* ORS 70.135(1) (providing that, although a limited partner is ordinarily not vicariously liable for the limited partnership's liabilities, a limited partner will become vicariously liable for those liabilities if he or she

participates in the control of the business). The text, specifically the word "acting," is capable of more than one interpretation, and we turn to the context.

### 2. *Context*

The context does little to clarify the text's meaning. Essentially, it reveals that, as initially enacted in 1993, ORS 63.165(1) shielded an LLC member or manger from liability for the LLC's obligations only for "being" a member or manager. Or Laws 1993, ch 173, § 35.[13] As noted, granting immunity for "being" a member or manager implies only that the grant of immunity extends to vicarious liability.

In 1999, the legislature amended the part of ORS 63.165 (1993) at issue by adding the word "acting." Or Laws 1999, ch 86, § 10. As discussed above, the addition of the word "acting" could have been intended to expand the scope of ORS 63.165(1) to include not only immunity from vicarious liability but also immunity from liability for all "actions" that a member or manager of an LLC takes in his or her official capacity. Alternatively, the legislature could have added "acting" to make clear that a member or manager of an LLC will not be vicariously liable either for "being" a member or manager of an LLC or for "acting" as such, *i.e.*, for exercising control over the LLC. That is, the legislature may have wanted only to clarify that a member or manager of an LLC enjoys greater immunity than a limited partner does. *Cf.* ORS 70.135(1) (1997).[14] Because the context does not resolve the ambiguity inherent in the text of ORS 63.165(1), we turn to the statute's legislative history.

### 3. *Legislative History*

The legislative history of ORS 63.165 shows that the 1993 legislature enacted the initial version of that statute to

---

[13] As first enacted, ORS 63.165 (1993) provided:

"A member or manager of the limited liability company is not personally liable for any debt, obligation or liability of the limited liability company merely by reason of being a member or manager or both."

*See* Or Laws 1993, ch 173, § 35.

[14] We note that the most recent version of the Uniform Limited Partnership Act (2001) abolishes the so-called "control rule" for determining when a limited partner will become personally liable for the partnership's liabilities. Oregon still retains that rule. *See* ORS 70.135(1).

protect members and managers from vicarious liability for the LLC's obligations even when the member or manager actively managed the LLC. A member of a taskforce charged with advising the legislature on LLCs told the 1993 House Judiciary Subcommittee on Civil Law:

> "The limited liability company gives flexibility for members to participate as little or as much as they wish * * * as opposed to a limited partner[ship] where the limited partner[s] cannot [participate] without running the risk of becoming general partners."

Tape Recording, House Judiciary Subcommittee on Civil Law, SB 285, May 19, 1993, Tape 116, Side A (statement of David Culpepper).

The legislative history of the 1999 amendments to the LLC statutes does not reveal an intent to depart from that original understanding. Rather, a member of the LLC taskforce told the 1999 legislature that the proposed amendments to ORS 63.165 merely "clarifie[d] the provisions [of the 1993 LLC statute] that members and managers do not have personal liability for obligations of the LLC." Tape Recording, House Committee on Business and Consumer Affairs, SB 51A, Feb. 24, 1999, Tape 40, Side A (statement of David Culpepper).

In clarifying ORS 63.165(1), the 1999 legislature relied on the recently published Uniform Limited Liability Company Act (ULLCA) (1996) and adopted verbatim subsections 303(a) and (b) from that uniform statute. The comment to those 1996 ULLCA provisions sheds some light on the 1999 legislature's intent. *See Bellikka v. Green*, 306 Or 630, 637, 762 P2d 997 (1988) (considering the comment to a uniform law on which an Oregon statute was based).

The relevant part of the comment to Section 303 explains:

> "A member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in contract or tort against the member or manager if that person were acting in an individual capacity. Where a member or manager delegates or assigns the authority or duty to exercise appropriate company functions, the member or

manager is ordinarily not personally liable for the acts or omissions of the officer, employee, or agent [of the LLC] if the member or manager has complied with the duty of care set forth in Section 409(c)."

ULLCA § 303 comment (1996). The first sentence in the comment makes clear that the use of the word "acting" in section 303 of the ULLCA, and by extension in ORS 63.165(1), was not intended to immunize members and managers from personal liability for their actions in managing an LLC. Rather, members and mangers remain personally liable for the actions that they take on behalf of an LLC to the same extent that they would be liable "if [they] were acting in an individual capacity."

Having identified that, as a general rule, members or managers will remain personally liable for their own acts, the comment goes on to identify one instance in which members or managers ordinarily will not be personally liable. The second sentence quoted above recognizes that, when a member or manager of an LLC delegates authority to carry out company functions, as an officer or director of a corporation might, the member or manager ordinarily will not be personally liable for a subordinate's negligence. We do not read the second sentence as establishing statutory immunity in that situation. Rather, the second sentence recognizes that, as a matter of common law, a member or manager ordinarily will not be personally liable for a subordinate's negligence. *Cf.* Jennifer L. Berger, Carol A. Jones, and Britta M. Larsen, 3A *Fletcher's Corporate Cyclopedia* § 1161 (2002) (describing the courts' resolution of that common-law issue).

Considering the text, context, and legislative history of ORS 63.165(1), we conclude that the 1999 amendments to ORS 63.165 did not change its substance but instead confirmed the 1993 legislature's original intent. Unlike limited partners, members or managers who participate in or control the business of an LLC will not, as a result of those actions, be vicariously liable for the LLC's debts, obligations, or liabilities. However, a member or manager remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against

the member or manager if that person were acting in an individual capacity. *See* ULLCA § 303 comment (1996). Because ORS 63.165(1) does not shield Swanson from responsibility for its own negligent acts in managing Sun Studs, we turn to the question whether, as a matter of Oregon negligence law, there was evidence from which a reasonable juror could find that Swanson was liable for the injuries that plaintiff suffered.

B.   *Oregon Negligence Law*

       This court explained in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), that,

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [a] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Id.* at 17. In this case, Swanson argues that its relationship to plaintiff is governed by a "particular standard of conduct"—namely, those standards that apply to corporate officers and directors. Swanson argues, and plaintiff does not dispute, that this court has recognized that "[a] director of a corporation is not liable for any tort of other subordinate agents in which he did not participate." *Pelton v. Gold Hill Canal Co.*, 72 Or 353, 357-58, 142 P 769 (1914) (holding that a corporation's directors were not liable for conversion when the manager of the corporation sold, without the directors' knowledge or participation, wheat entrusted to the corporation); *accord Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 298, 545 P2d 1374 (1976) (applying that rule to the officer of a corporation who had not participated in or been aware of another officer's conversion of the plaintiff's property); *cf. Muellhaupt v. Strowbridge Est. Co.,* 136 Or 106, 123-24, 298 P 189 (1931) (applying that rule but holding that the plaintiff had an actionable claim against the defendant because he had had knowledge of a fraud committed on the corporation's behalf and personally profited from it).

       Swanson argues that, in acting as the member-manager of Sun Studs, its role was comparable to that of

a corporate officer and should be judged by the same standard. We agree with both the premise and conclusion of that argument. As Swanson's argument implicitly recognizes, an LLC gives its members flexibility in choosing a management structure. *See* Ribstein and Keatinge, *Limited Liability Companies* § 2.3.[15] In this case, the evidence on summary judgment showed that Swanson had adopted a corporate model; that is, in managing safety at Sun Studs, Swanson acted in the same way that an officer in a corporation would. Swanson delegated primary responsibility for safety to Sun Studs' HR director and mill manager but retained oversight authority of their implementation of Swanson's safety policies. Having agreed with Swanson's premise, we also agree with its conclusion that the negligence standards that apply to corporate officers and managers apply to Swanson.

Turning to the applicable common-law negligence standard, we note that this court has held that a director or an officer of a corporation will be liable for a subordinate's tortious acts if the officer knew of those acts or participated in them. *See Lewis*, 274 Or at 298 (officers); *Pelton*, 72 Or at 357-58 (directors).[16] In this case, a reasonable juror could infer that Swanson "participated" in worksite safety at Sun Studs in three respects: Swanson formulated a general safety policy that it directed Sun Studs to implement; it delegated primary authority for safety at Sun Studs to Sun Studs' HR director and mill manager; and Swanson undertook to oversee those persons' implementation of Swanson's general safety policies. However, there was no evidence from which a reasonable juror could infer that Swanson negligently had formulated the general safety plan that it directed Sun Studs to implement. Similarly, a reasonable

---

[15] Ribstein and Keatinge explain that, "[w]hile the management structure of an LLC is limited only by the owners' imagination," there are three "fundamental" or typical structures: a corporate or "representative management" structure; a limited partnership or "entrenched management" structure; and a general partnership or "direct management" structure. *Limited Liability Companies* § 2.3.

[16] In this case, plaintiff does not assert any other basis for Swanson's liability. *Cf. Lewis*, 274 Or at 298 (quoting *Fletcher's Corporate Cyclopedia* for the proposition that an officer of a corporation could be liable for a subordinate's conversion of another's property "based on [the officer's] participation, knowledge amounting to acquiescence or the breach of some duty [the officer] owes to the owner of the property").

juror could not infer that Swanson negligently delegated primary responsibility for safety to Sun Studs' HR director and mill manager. *See Schaefer v. D & J Produce, Inc.*, 403 NE2d 1015, 1021 (Ohio App 1978) (recognizing that an officer with general responsibility may delegate that responsibility to a subordinate as long as the officer exercises due care in doing so). Finally, there was no evidence from which a reasonable juror could infer that Swanson negligently exercised the oversight authority that it retained over Sun Studs' implementation of Swanson's safety policies. *See id.*[17]

One final point deserves mention. The "participation" doctrine that the court stated in *Pelton* and that we apply here rests on a distinction between misfeasance and nonfeasance. *See Pelton*, 72 Or at 358 (recognizing that distinction). As the California Court of Appeal explained in *Towt v. Pope*, 336 P2d 276 (Cal App 1959), "[i]n the absence of active participation in an act of misfeasance, generally an officer of a corporation is not personally liable to a third person for nonfeasance." *Id.* at 283. As noted, one potential problem with the participation doctrine is that it is sometimes difficult to categorize a specification of negligence as either nonfeasance or misfeasance. *See Miller v. Muscarelle*, 170 A2d 437, 447 (NJ Super Ct App Div 1961) (discussing the inconsistencies that have resulted in applying that distinction). Another potential problem is that the doctrine can foreclose any inquiry into an officer's negligent failure to carry out an assigned task. *See Schaeffer*, 403 NE2d at 1020.

Initially, most American courts adopted the participation doctrine to determine when an officer or manager will be liable for a subordinate or fellow employee's negligence. *See Miller*, 170 A2d at 447 (describing the development of the doctrine). A substantial number of jurisdictions still

---

[17] As discussed below, the "participation" standard that this court stated in *Pelton* turns on a distinction between misfeasance, which is actionable, and nonfeasance, which is not. It is sometimes difficult, however, to classify a specification of negligence as either misfeasance or nonfeasance. Evidence that Swanson undertook to oversee Sun Studs' implementation of Swanson's general safety policies illustrates that difficulty. We assume, for the purposes of resolving plaintiff's negligence claim, that Swanson's undertaking constituted "participation" even though it is arguable that, if Swanson were negligent, any error on its part lay in its failure to supervise, namely its nonfeasance.

adhere to it. *See* 3A *Fletcher's Corporate Cyclopedia* § 1161 (listing jurisdictions). Other jurisdictions have rejected or modified the doctrine. *See Miller*, 170 A2d at 447-49 (rejecting the standard); *Schaefer*, 403 NE2d at 1020 (describing cases rejecting the doctrine as reflecting the modern trend); *Martin v. Wood*, 400 F2d 310, 312-13 (3d Cir 1968) (same). Those courts that have rejected or modified the doctrine have not always been consistent in articulating a new standard; however, they have recognized, as a general rule, that an officer or manager whose assigned task is the supervision of others will be liable for a negligent failure to carry out that task even though that failure could be characterized as nonfeasance. *See Restatement (Third) of Agency* § 7.01 comment d (2006).[18]

In this case, both plaintiff and Swanson have framed their arguments on the assumption that plaintiff must prove participation or knowledge on Swanson's part to prevail on his negligence claim. Neither party has argued that a different standard applies or should apply in Oregon. We accordingly leave that issue for another case. Applying the standard on which the parties' arguments rest, we hold that plaintiff's negligence claim fails.[19]

## II.  THE ELL

The ELL "imposes a heightened statutory standard of care on a person or entity who either is in charge of, or responsible for, any work involving risk or danger." *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918

---

[18] The *Restatement* sets out the following principles:

"[T]he fact that A is the President of P Corporation does not in itself subject A to liability for E [an employee's] violation of the Fair Housing Act. In contrast, if A directs or participates in an action that violates the Act, A is subject to liability. However, an agent whose assigned function within an organization includes the supervision of others may be subject to liability when a failure by the agent properly to supervise breaches a duty that the agent owes to a third party."

*Restatement* at § 7.01 comment d.

[19] In this case, the difference between the standard stated in *Pelton* and the standard stated in *The Restatement (Third)* may not make any difference because we have assumed that, in undertaking to oversee Sun Studs' implementation of the safety plan, there was sufficient evidence of participation to test Swanson's actions for negligence. The difference, however, might matter in a subsequent case.

(2003).[20] In this case, the "work involving risk or danger" was driving forklifts through the areas of the mill in which Sun Studs' employees customarily walked. The question on which plaintiff's ELL claim turns is whether Swanson was a person "having charge of, or responsibility for" that work. *See* ORS 654.305 (stating that standard).[21] On that issue, this court has held that, in addition to a worker's direct employer, liability under the ELL

> "can be imposed on a person or entity who (1) is engaged with the plaintiff's direct employer in a 'common enterprise'; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk producing activity is performed."

*Woodbury*, 335 Or at 160 (summarizing *Wilson v. P.G.E. Company*, 252 Or 385, 391-92, 448 P2d 562 (1968)).

Swanson was not plaintiff's "direct employer," and the Court of Appeals held that a reasonable juror could not infer that Swanson was plaintiff's "indirect employer" for the purposes of the ELL; that is, the Court of Appeals held that a reasonable juror could not infer that Swanson was engaged in a common enterprise with Sun Studs, that Swanson actually controlled the risk-producing activity, or that Swanson retained the right to control that activity. *Cortez*, 248 Or App at 446-48. On review, we agree with the Court of Appeals that Swanson was not liable under the ELL on a common-enterprise or actual-control theory of responsibility. *See Sacher v. Bohemia, Inc.*, 302 Or 477, 486-87, 731 P2d 434 (1987) (defining when a third party will

---

[20] The ELL provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance [*sic*] and devices."

ORS 654.305.

[21] Swanson does not argue that, if it were a person "having charge of, or responsibility for," the risk-producing activity, no reasonable juror could find from the evidence on summary judgment that it failed to satisfy the standard that the ELL requires.

be liable under a common-enterprise theory);[22] *Woodbury*, 335 Or at 162 (explaining that a reasonable juror could find actual control where the owner oversaw the construction of a high platform from which the plaintiff fell and instructed the plaintiff's employer how to build the platform). We disagree, however, that a reasonable juror could not infer that Swanson retained the right to control the method or manner in which the risk-producing activity was performed.

To establish that Swanson "retained the right to control" a risk-producing activity, plaintiff must either "identify some source of legal authority for that perceived right" or evidence from which a retained right could be inferred. *See Boothby v. D.R. Johnson Lumber Co.*, 341 Or 35, 41, 137 P3d 699 (2006). In this case, Swanson was the sole member-manager of Sun Studs. As such, the governing statutes gave Swanson the right to manage Sun Studs' business. *See* ORS 63.130(1)(a) (explaining that, in member-managed LLCs, each member has equal rights in the management and conduct of the LLC's business). Although Swanson chose to delegate responsibility for day-to-day decisions to Suns Studs' mill manager and HR director, Swanson retained the right, under ORS 63.130, to manage all aspects of Sun Studs' operation, including the way that forklifts operated in the mill and the safety conditions in their area of operation.

Beyond that, there was evidence from which a reasonable juror could infer that, even though Swanson had chosen to delegate primary authority to Sun Studs to operate the mill and regulate the way that forklifts were used, Swanson retained the right to do so itself. *See Boothby*, 341 Or at 41 (noting that a retained right to control can be based on either a source of legal authority, such as a contract, or evidence of a retained right). In this case, Swanson's executive vice president acknowledged that Swanson "could have made all of th[e safety] changes" when it first acquired Sun Studs that Sun Studs later made in response to plaintiff's

---

[22] Typically, a common enterprise theory applies to a work site in which two companies are working together on a project. The court has recognized that, when an employee of one company works with another company that has "charge of, or responsibility for, any work involving a risk or danger" and the employee is injured as a result, the employee can bring an ELL claim against the other company under a common enterprise theory. *See Thomas v. Foglio*, 225 Or 540, 358 P2d 1066 (1961).

accident. Similarly, the executive vice-president agreed "that if the Swanson group people wanted to change either the design or the equipment used in the yard at Sun Studs, they could do that." A reasonable juror could infer from that evidence that, as the LLC statutes state, Swanson retained the right to manage the day-to-day operations of Sun Studs, including the operation of the forklifts and attendant safety procedures. Put differently, a reasonable juror could infer that Swanson "retain[ed] the right to control the manner or method in which the risk-producing activity was performed." *See Woodbury*, 335 Or at 160.

Because Swanson argues that this court's decision in *Wilson* leads to a different conclusion, we discuss that case briefly. In *Wilson*, an owner contracted with an independent contractor to build an electric transmission line. 252 Or at 389. Under the contract, the independent contractor was responsible for the method or manner in which the risk-producing activity was performed. *Id.* at 393. The owner, however, retained the contractual right to "'increase th[e] safety, efficiency, and adequacy'" of the independent contractor's methods "'[i]f at any time the Contractor's methods *** appear to the [owner] to be unsafe.'" *Id.* at 394 (quoting the contract) (emphasis deleted).

The contractual right that the owner retained in *Wilson*, as the court characterized it, was limited to requiring greater safety procedures than those that the contractor had put in place, and the question in *Wilson* was whether the owner's retention of that right was sufficient to make it liable under the ELL. The court held that it was not, for three related reasons. First, the court explained that, in order for an owner's retained right to give rise to liability under the ELL, the right had to "bear some relation to the *creation* of a risk of danger to work[ers] resulting from dangerous working conditions." *Id.* at 396 (emphasis added). Under the terms of the parties' contract, however, the independent contractor was responsible for the manner or methods in which the risk-producing activity was performed. *Id.* at 396. Second, although the owner retained the right to require greater safety procedures, the court explained that the retention of that right "created no risk of danger to [the] plaintiff." *Id.* The court reasoned that the retention of that

right would create a risk of danger to the plaintiff only if it caused the independent contractor to be less diligent regarding safety, a possibility that the court discounted because "the duty to maintain safety remained the primary duty of the contractor." *Id.* Finally, the court reasoned that imposing liability on owners for retaining a contractual right to require greater safety measures would serve as a disincentive to including such clauses in future contracts and thus would be contrary to the purposes underlying the ELL. *Id.* at 396-97.

*Wilson* arose in the context of an ELL claim against an owner by an employee of an independent contractor. This court explained that, under the terms of the contract, the independent contractor was responsible for the method and manner in which the risk-producing activity was performed and that the owner retained only the limited right to require greater safety measures than the ones that the contractor had put in place. In that circumstance, the right that the owner retained did not bear on the creation of any additional risk to which the employee was exposed. Whatever the merits of that decision,[23] this case arises in a different context. Sun Studs was not an independent contractor over which Swanson retained only a limited right of control. Rather, Swanson was the sole member-manager of Sun Studs, and the jury reasonably could find that, as such, Swanson retained the right to control all aspects of Sun Studs' operation.

Put differently, a jury reasonably could find from the evidence on summary judgment that Swanson "retain[ed] the right to control the manner or method in which the risk-producing activity was performed." *See Woodbury*, 335 Or at 160. Were we to hold otherwise, we would effectively eviscerate a category of responsibility under the ELL that we have long recognized. *See, e.g.*, *Boothby*, 341 Or at 41; *Woodbury*, 335 Or at 160; *Wilson*, 252 Or at 392. The trial court correctly held that the evidence in support of plaintiff's ELL claim was sufficient to avoid summary judgment.

---

[23] Plaintiff does not argue that *Wilson* was wrongly decided, and we assume that the court's decision was correct in light of the particular contractual relationship in that case.

We recognize that some tension may exist between our resolution of plaintiff's negligence and ELL claims. Any tension results, however, from the differences between the common-law tort standards stated in *Pelton* and *Lewis* and the broader statutory standards that the legislature adopted in the ELL. Our negligence cases have held that, in the absence of knowledge or participation, corporate officers and directors are not liable for their employees' negligence. That is so even though corporate officers, having delegated responsibility to others to carry out tasks, retain the right to control how those tasks are carried out. Our ELL cases, however, have held that persons who retain the right to control how others carry out risk-producing activities are liable under the ELL. Our resolution of plaintiff's claims reflects those differing standards. Because we conclude that Swanson is not entitled to summary judgment on the merits of plaintiff's ELL claim, we turn to Swanson's remaining argument that ORS 656.018 (2011) shielded it from liability for violating the ELL.

### III.   ORS 656.018

The workers' compensation statutes provide that the right to receive workers compensation is the exclusive remedy for certain workplace injuries. ORS 656.018 (2011). Before 2013, ORS 656.018 (2011) provided, in part:

> "(1)(a)   The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, \*\*\* that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom \*\*\*.
>
> "\* \* \* \* \*
>
> "(3)   The exemption from liability given an employer under this section is also extended to the employer's insurer, the self-insured employer's claims administrator, the Department of Consumer and Business Services, and the contracted agents, employees, officers and directors of the employer, the employer's insurer, the self-insured employer's claims administrator and the department[.]"

In analyzing Swanson's reliance on ORS 656.018 (2011), the Court of Appeals recognized that an LLC can be

an "employer" within the meaning of the workers' compensation statutes and thus can come within the exclusive remedy provision in ORS 656.018(1) (2011). *See* ORS 656.005(13)(a) and (23) (defining who is an "employer" for the purposes of workers' compensation).[24] The Court of Appeals also recognized that ORS 656.018(3) (2011) did not extend the immunity that LLCs enjoy as "employers" to LLC members in the same way that that subsection extended immunity to corporate officers and directors. The Court of Appeals found that omission telling and concluded that, as a result, LLC members such as Swanson did not come within the protections of ORS 656.018(3) (2011).

On review, Swanson advances primarily three arguments to demonstrate that ORS 656.018 (2011) included LLC members.[25] Swanson argues initially that, in shielding LLCs from liability as employers in ORS 656.018(1) (2011), the legislature necessarily intended to shield the managing members of an LLC as well. Swanson reasons that, because LLCs cannot function without managers, shielding LLCs from liability without also extending immunity to the persons who manage them would defeat the goal of granting immunity to LLCs in the first place. As a policy matter, Swanson's argument has some force. It is difficult, however, to reconcile Swanson's policy argument with the text and context of ORS 656.018 (2011).

As the Court of Appeals noted, subsection (1) of ORS 656.018 (2011) exempted employers "who satisfy[y] the duty required by ORS 656.017(1)" from further liability for their employees' workplace injuries. Subsection (3) of that statute extended that exemption to, among others, the employer's employees, officers, directors, and insurers. ORS 656.018(3) (2011). Subsection (3), however, did not extend

---

[24] ORS 656.005(13)(a) defines an employer as "any person *** who contracts to pay a remuneration for and secures the right to direct and control the services of any person." ORS 656.005(23) provides that the term "'person' includes [a] partnership, joint venture, association, limited liability company and corporation."

[25] As noted, the 2013 legislature amended ORS 656.018 to add LLC members to the list of exempt entities in ORS 656.018(3). That legislative change clarifies the scope of ORS 656.018(3) going forward, but it does not necessarily resolve what that subsection meant before then. The 2013 amendment could have been precautionary. We accordingly discuss Swanson's arguments based on ORS 656.018(3) (2011).

that exemption to LLC members and managers. That omission may have been an oversight. However, we hesitate to insert what the legislature has omitted based on our unsupported belief that the legislature must have meant something other than what it said.

The context also cuts against Swanson's argument. As the Court of Appeals noted, the legislature provided a "key" in the LLC statutes to define when other statutory provisions will apply to LLCs. *See Cortez*, 248 Or App at 441. Specifically, ORS 63.002(2) provides that, "[w]henever a section of the Oregon Revised Statutes applies to both 'partners' and 'directors,' the section shall also apply" to members in member-managed LLCs and managers in manager-managed LLCs. Because ORS 656.018 (2011) did not refer to both partners and directors, ORS 63.002(2) teaches that members and managers do not qualify for the immunity that ORS 656.018(3) (2011) extended to directors. For us to accept Swanson's argument, we would have to overlook not only the omission of members and managers from ORS 656.018(3) (2011) but also the fact that, under the terms of ORS 63.002(2), ORS 656.018 (2011) did not apply to LLC members and managers.

Swanson's second argument is based on ORS 63.160, which authorizes LLCs to indemnify members and managers for their actions on behalf of the LLC. Swanson notes that ORS 656.018(1) (2011) prevented third parties from bringing indemnification claims against entities that qualify as "employers" under that subsection. Swanson reasons that, if ORS 656.018(3) (2011) did not include members and managers and if ORS 656.018(1) (2011) precluded it from bringing an indemnification claim against Sun Studs LLC, the indemnification that ORS 63.160 authorizes LLCs to provide members and managers will be ineffective as applied to workplace injury claims that LLC employees, such as plaintiff, bring against LLC member-managers.

Swanson's point is a fair one. We note, however, that, if we were to agree with Swanson and interpret ORS 656.018(3) (2011) to include LLC members and managers, then the indemnification that ORS 63.160 authorizes would be rendered superfluous as applied to workplace injury claims

that LCC employees bring against LLC members and managers. Whichever way we interpret ORS 656.018(3) (2011), ORS 63.160 would become either ineffective or unnecessary as applied to one subset of claims for which LLC members and managers may be held liable. The context that Swanson identifies is, ultimately, a wash and provides no basis for departing from the plain text of ORS 656.018(3) (2011) and ORS 63.002(2).

Finally, Swanson argues that the list of exempt entities set out in ORS 656.018(3) (2011) is not exclusive; rather, Swanson contends that the list illustrates types or categories of exempt entities. Swanson reasons that, because managing members of an LLC may be similar to officers or directors, we should recognize that ORS 656.018(3) (2011) included not only officers and directors but also managing members. We agree that, as noted above, Swanson's role in managing safety at Sun Studs was comparable to that of a corporate officer. However, Swanson's final argument is at odds with the interpretative principle stated in ORS 63.002(2). As noted, that principle identifies those instances in which sections of the Oregon Revised Statutes that do not refer expressly to LLCs will apply to them. Under ORS 63.002(2), a statutory section will apply to LLC members and managers when that section applies to "both 'partners' and 'directors.'" That statutory directive cuts against interpreting the terms "officer" and "director" in ORS 656.018(3) (2011) to include not only corporate officers and directors but other persons who perform comparable tasks. We accordingly agree with the Court of Appeals that Swanson cannot take advantage of the statutory immunity that ORS 656.018 (2011) provided.

We summarize our conclusions briefly. ORS 63.165 immunizes members and managers of an LLC from vicarious liability for the debts, obligations, and liabilities of that LLC. LLC members and managers, however, remain personally liable for their acts and omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity. Even though ORS 63.165 does not shield Swanson from liability for its own negligence in managing Sun Studs, Swanson acted towards Sun Studs in the same way that an

officer of a corporation would. Applying the negligence standard applicable to corporate officers, we conclude that the evidence on summary judgment does not permit an inference that Swanson either had actual knowledge of the conditions that resulted in plaintiff's injury or actively participated in creating them. Swanson was entitled to summary judgment on plaintiff's negligence claim.

Even though Swanson was not plaintiff's employer for the purposes of the ELL, the jury reasonably could find that Swanson was responsible for those injuries under the ELL because it retained the right to control the manner or method in which the risk-producing activity was performed. It follows that Swanson was not entitled to summary judgment on plaintiff's ELL claim.

Finally, the exclusive remedy provision of the workers' compensation statutes did not apply to workplace injury claims against LLC members that arose before June 24, 2013. Because plaintiff's injury occurred before that date, ORS 656.018 (2011) did not shield Swanson from liability under the ELL.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.